**Robert Lee MOORE, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 22358.**

United States Court of Appeals Fifth Circuit.

Feb. 1, 1966.

---

Robert A Watson, Estil A. Vance, Jr., Fort Worth, Tex., for appellant.

Conard L. Florence, Asst. U. S. Atty., Fort Worth, Tex., Charles D. Cabaniss, Asst. U. S. Atty., Dallas, Tex., Melvin M. Diggs, U. S. Atty., Stanley McMurry, Asst. U. S. Atty., for appellee.

Before RIVES, BROWN and MOORE,* Circuit Judges.

RIVES, Circuit Judge:

Richard L. Parks and Robert Lee Moore were jointly indicted in two counts, each charging a violation of Title 18, U.S.C. § 1708. The first count charged that the defendants stole a parcel from a United States mail sack; the second count charged that they knowingly had in their possession a set of dinnerware, the contents of a parcel which had been stolen from an authorized depository for mail matter, knowing the same to have been stolen.

Parks entered a plea of guilty and Moore pleaded not guilty. On a trial by jury, Moore was found guilty under both counts. He was sentenced by the court to serve five years' imprisonment on each count, the sentences to run concurrently. On appeal, the questions presented for review are: (1) whether the evidence is sufficient to support Moore's conviction; (2) whether the district court failed adequately and properly to instruct the jury; and (3) whether the judge improperly commented to the jury upon the weight of the evidence.

(1) Sufficiency of the Evidence.

The court did not err in denying Moore's motion for a judgment of acquittal. Moore admitted that he loaned a knife to Parks, and Parks testified that he used the knife to open the parcel which he had stolen from the mail sack. Moore's guilt or innocence turned on his intent and whether he knew of the theft. The testimony of government witness H. A. Shirk, if believed by the jury, furnished an adequate foundation for finding that Moore aided and abetted Parks in the commission of the theft, or associated himself with Parks in the possession of the stolen property.

At about 7:30 p. m. on December 15, 1963, Moore and Parks walked out of the Texas and Pacific Railroad Station in Fort Worth, Texas. They walked up a flight of stairs and out on a platform where a number of mail trucks or carts were located, piled high with sacks of mail. Moore walked on one side of the carts, Parks on the other. The mail was stacked so high that they could not see each other. Parks took a sack of mail from one of the mail carts.

Mr. Shirk, a Texas and Pacific Railroad locomotive engineer, testified that he had seen two men dressed similarly to the garb admittedly worn by Moore and Parks, walking on either side of several mail carts; that the man to the right of the cart picked up a mail sack, put it over his shoulder, and went around the cart where the two men met. Shirk further testified that when he flashed a flashlight toward the two men, both of them ran, and he immediately reported the theft.

One policeman found the stolen mail sack and its scattered contents beside a nearby warehouse. Another policeman found Moore and Parks and arrested them some seven or eight blocks from the Texas and Pacific Station. Parks was carrying the box of dinnerware

---

* Of the Second Circuit, sitting by designation.

which he had stolen from the mail sack. Upon searching Moore, he was found to have a pocket knife.

Both Parks and Moore testified. Each admitted to a previous criminal record. According to their testimony, they had met casually while each was seeking employment in Fort Worth. On the afternoon in question, they and several other unemployed men had gone to the railroad station, "because that is the only place we had a bathroom, and to go and get warm." They left the station to go to their respective places of lodging.

Parks admitted stealing the mail sack, testified that it was an impulsive act, and that Moore could not see him. He further testified that he carried the sack in front of him for about three-quarters of a block to a warehouse, took the mail out of the sack and found that he didn't have anything with which to open the boxes. He caught up with Moore and asked Moore to lend him his knife.

"A. He wanted to know what I was going to use it for.

"Q. What did you say?

"A. I wouldn't tell him, I just said, 'Let me use your knife.' He said, 'Well, if there is any trouble, I don't want any part of it.' And I just turned away and went back.

"Q. Went back quickly?

"A. Yes.

"Q. Then what did you do?

"A. I opened the box, and the only valuable thing was the dishes. I took those."

Parks then walked rapidly along the track, caught up with Moore and returned his knife. Parks was then carrying the stolen dishes. Moore asked no questions. They waited for a freight train to pass, and took a few steps when lights shined on them and they were apprehended.

■ In brief, according to the testimony of Parks and Moore, Parks was the sole guilty party. However, according to the testimony of Mr. Shirk, the two men met together shortly after the mail sack was stolen, and both ran when he flashed his light on them. Coupled with the admitted loan of the knife by Moore to Parks, there was sufficient evidence to support Moore's conviction on either count.

(2) Instructions to the Jury.

The Government, with commendable candor, raises the question of whether, in view of the decision in Milanovich v. United States, 1961, 365 U.S. 551, 81 S.Ct. 728, 5 L.Ed.2d 773, the district court erred in its omission of instructions that the jury could convict of either Count 1 or Count 2, but not of both. The Government insists, however, that the Milanovich opinion is not determinative of the disposition of this appeal. We do not reach that question, because we are convinced that, under the circumstances of this case, the judgment must be reversed for failure of the district court to inform the jury of the type of activity necessary to constitute aiding and abetting.

It is undisputed that Parks was the one who actually stole the parcel from the mail sack and the one who retained the stolen dinnerware in his hands. Moore could be found guilty only on a theory of accessorial responsibility.

It is further undisputed that Moore loaned his knife to Parks, and that such loan aided Parks in the theft of the package and in committing it to his possession. The crucial issue was that of criminal intent. Did Moore intend to join with Parks in stealing the parcel from the mail sack? Did Moore loan his knife to Parks with knowledge that it was to be used in the commission of a crime and with the intention that it be so used?

The district court charged the jury in pertinent part as follows:

"So now, if you find and believe from the evidence that has been adduced before you in this court, beyond a reasonable doubt, that the defendant, Robert Lee Moore, did, as charged in Count 1, aid or par-

ticipate in the abstraction of mail from the United States Mail bag, as charged in Count 1, then you will find the defendant, Robert Lee Moore, guilty as charged.

"If you have a reasonable doubt, you will acquit him.

"On Count 2, if you find from the evidence beyond a reasonable doubt that the box abstracted from the mail contained dishes which were there in the possession of the defendant (sic), one of whom being Robert Lee Moore, and if you so find from the evidence as above required, then you will find Robert Lee Moore guilty on Count 1 and so say in your verdict.

"If you have a reasonable doubt of it, you will acquit him.

\*   \*   \*   \*   \*   \*

"Now, on the question of accomplice, one that knowingly and voluntarily cooperates with, aiding, assisting, advising, or encouraging another in the commission of a crime is an accomplice.

"The testimony of an accomplice ought to be received with suspicion and with a great degree of care and caution. A principal may be, when considering his evidence, an accomplice and yet, at the same time a principal, that is a principal offender; so if you find and believe from the evidence that the witness, Richard Parks, was participating in the offense, he would be an accomplice, and you may treat his evidence as defined.

"On the subject of principals, whoever directly commits any act, constituting an offense defined in any law of the United States, or whoever abeits (sic) or counsels, or induces or procures the commission is a principal. Under the Federal law administered in this Court, anyone aiding and abeiting (sic) in the commission of an offense is a principal."

At the conclusion of its oral charge, the court asked whether defendants' counsel had any objections or requests, and Moore's appointed counsel responded in pertinent part as follows:

"MR. WATSON: Yes, I do. I would like to refer to that part of the charge that has aiding and abeiting (sic), and the restrictive parts of the charge. I would like to ask for a more stringent charge to the jury to the effect that they must be convinced beyond a reasonable doubt that the defendant was a participant and furthering the crime, rather than a knowing spectator. The words 'rather than a knowing spectator,' are important in this case and I ask for those on the authority of US 310 F.(2) 249, and the particular charge is approved on page 253.

"In addition, as further support for that charge I refer to 215 F.(2) 230 [should be 315 F.2d 230]. In that case, it was held the aider or abettor must associate himself with the unlawful venture and that he must participate in it. I am requesting the charge be expanded to show there must be an affirmative act as opposed to the way Your Honor charged it, and these are two recent cases that I think would have a bearing on this."

The court overruled the objection, stating: "I commend counsel for his research on these matters, however, I think the charge given covers and embraces the law applicable to the case and I will leave the charge with the jury."

■ The Government maintains that the request of Moore's counsel was made too late, coming as it did at the end of the court's charge. It would be completely impracticable to require defendant's counsel to assume that the court would fail fairly to charge the jury on the principles of law applicable to the case. Rather the assumption is to the contrary, since that much is the duty of the court. Further, the court accepted the objection and request as timely and

properly made. The court ruled on the merits that "the charge given embraces the law applicable to the case." We hold, therefore, that consideration of the sufficiency of the instructions is not precluded by Rule 30, Fed.R.Crim.P. See 4 Barron & Holtzoff, Federal Practice & Procedure, Rules ed. § 2234.[1]

The part of the court's instruction defining "accomplice" was made in connection with the court's cautionary instruction to the jury that they should treat Richard Parks' testimony "with suspicion and with a great degree of care and caution." [2]

The part of the charge defining a principal as including one who aids or abets in the commission of an offense is no more than a paraphrase of the statute, 18 U.S.C.A. 2(a). It completely ignores the crucial question of Moore's criminal intent *vel non* as an essential factual issue in the case.

■ It is well established that in order for a person to aid and abet another in the commission of a crime, it is necessary that he associate himself with the unlawful venture; that he participate in it with the desire of accomplishment and that he seek to make it succeed by his actions.[3]

■■ We recognize that courts are not obliged to charge in detail a defend-

ant's thory of the law if the law and the facts of the case are simple. Apel v. United States, 8 Cir. 1957, 247 F.2d 277. But, under the circumstances of this case, the words "aiding and abetting" are not self-explanatory. Without instruction from the court, the jury may well have thought that by simply accompanying Parks and by lending Parks his knife Moore would be "aiding and abetting." Under the circumstances of this case, the court should have gone further and should have instructed the jury that before finding Moore guilty, they must find that he associated himself with the commission of the crime; that he participated in it with the desire to accomplishment and sought to make it succeed by his actions. United States v. Garguilo, 2 Cir. 1962, 310 F.2d 249.

A number of other questions are presented on which we do not find it necessary to rule, such as the failure to instruct on the meaning of possession, the failure to define "knowingly," and the claim that the judge improperly commented on the weight of the evidence. Those questions will probably not be presented on another trial, and the present judgment must be reversed for failure to charge the jury as to the kind of activity necessary to constitute aiding and abetting.

---

**1.** Upon any retrial, the trial court and counsel might well consider taking advantage of the provisions of Rule 30, Fed. R.Crim.P. which, although not mandatory, were intended to give court and counsel an opportunity to formulate their views as to the applicable law in advance instead of having to pass upon isolated requests at the close of the charge which may be subject to "the danger of error inherent in the necessarily rapid consideration of an oral request at such a time and on the possibly undue impact of a separate charge devoted to a single fact or theory." United States v. Kahaner, 2 Cir. 1963, 317 F.2d 459, 477. See also 8 Moore's Federal Practice, 2d ed. ¶30.03 [2] and ¶30.04.

**2.** Incidentally, while there was no objection to that instruction, it is open to doubt as to whether it effectively begged the

question of Moore's guilt as an accomplice of Parks, and further as to whether the policy of the rule applicable to an accomplice's testimony *against* the defendant applies to his testimony *in favor of* the defendant. See 7 Wigmore on Evidence § 2057, p. 322.

**3.** Simsirdag v. United States, 5 Cir. 1963, 315 F.2d 230; United States v. Honeycutt, 4 Cir. 1962, 311 F.2d 660; United States v. Garguilo, 2 Cir. 1962, 310 F. 2d 249; Clark v. United States, 5 Cir. 1961, 293 F.2d 445; Jasso v. United States, 5 Cir. 1961, 290 F.2d 671; Edwards v. United States, 5 Cir. 1960, 286 F.2d 681; Johnson v. United States, 8 Cir. 1952, 195 F.2d 673; United States v. Falcone, 2 Cir. 1940, 109 F.2d 579, aff'd 311 U.S. 205, 61 S.Ct. 204, 85 L. Ed. 128 (1940); United States v. Peoni, 2 Cir. 1938, 100 F.2d 401.

The Court expresses its sincere appreciation to Mr. Robert A. Watson and Mr. Estil A. Vance, Jr., court-appointed counsel, for their able representation of the appellant.

Reversed and remanded.