UNITED STATES of America

v.

Daniel L. ROBINSON, Appellant.

No. 22876.

United States Court of Appeals, District of Columbia Circuit.

Oct. 14, 1970.

Mr. Robert W. Coll, Washington, D. C. (appointed by this court) was on the briefs for appellant.

Messrs. Thomas A. Flannery, U. S. Atty., John A. Terry, Nicholas S. Nunzio, and Terry Philip Segal, Asst. U. S. Attys., were on the brief for appellee. Messrs. David G. Bress, U. S. Atty., at the time the record was filed, and Frank Q. Nebeker, Asst. U. S. Atty., at the time the record was filed, also filed appearances for appellee.

Before BAZELON, Chief Judge, and McGOWAN and ROBINSON, Circuit Judges, in Chambers.

PER CURIAM:

Appellant was convicted by a jury of five criminal offenses growing out of an armed robbery of a federally insured building association, and presents two issues on this appeal.

One claim is that the in-court identification made by a bank teller at trial was fatally tainted by a pretrial photographic identification. *See* Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). After a pretrial evidentiary hearing, the court found that there was no violation of due process.[1] There is, we think, adequate support in the record for the court's finding.

On the same day that the robbery was committed, the police arrested six suspects, including appellant. Individual photographs were taken of each of these persons arrested. Two group photographs were also taken, but not all of the suspects were included in these

---

1. The Government's direct case at trial included no reference to the photographic identification.

pictures. Appellant and two of the remaining five suspects, Garnett and Palmer, comprised the first group photograph. Only Garnett and Palmer were pictured in the second grouping. Hence, in the eight pictures taken by the police on the day of the robbery, appellant appeared twice (once individually and once in a group photograph), while suspects Garnett and Palmer appeared three times (once individually and once in each group photograph). Four days after the arrest, detectives visited the two tellers in the bank and asked them to look at an array of fourteen pictures. This array included the eight pictures mentioned above, and six individual photographs of other persons. One teller made no identification, but the second positively identified three of the suspects, including appellant.[2]

■ It is urged by appellant that this showing was suggestive in two respects. First, all six suspects had the date the photograph was taken (which also happened to be the date of the arrest and the date of the crime) displayed on their photographs. Second, three of the six were the only ones photographed in the group pictures. Hence, appellant claims that the identifying teller's attention was improperly drawn to him. While the inclusion of group photographs in a showing perhaps injects a doubtful ele-

ment, we note that in *Simmons* the defendant was pictured several times in six-photograph group array. In our case, appellant appeared only twice in a fourteen-photograph array while another suspect who appeared three times was not identified by either eyewitness. Furthermore, it may be true that in certain instances a date placed on the picture will be overly suggestive. In the case at hand, however, the witness testified that she did not realize the significance of the numbers.[3]

■ Finally, *Simmons* indicates that there are general circumstances that may support the validity of a photographic identification. These include the conduct of the police in displaying the photographs, the length of time the witness viewed the participants at the time of the crime, and the positiveness with which the witness adheres to the identification. The record in this case makes clear that (1) the police officers engaged in no improper or suggestive activities, (2) the teller had an excellent opportunity to observe appellant in good lighting conditions for a four to five minute period, and (3) the teller was positive in her identifications. The District Court did not, we think, err in its finding that the photographic identification did not violate the due process clause.[4]

2. An enormous amount of time at trial was spent establishing exactly how many pictures were displayed and exactly who appeared in each. This suggests that, in the interest of accuracy as well as saving valuable trial time, greater care be taken in preserving and assembling photographic materials essential to litigation in order that proceedings may be conducted without the delay and confusion that attended this matter.

3. Q. Mrs. Bircher, did you attach any significance to the calendar number 17 on many of those pictures?
    A. Not until Thursday of last week whenever everybody started talking about the numbers on the pictures. All I was looking at was the faces.
    Q. With respect to Mr. Robinson's pictures, do you see it there?
    A. Yes.

Q. How can you make out the month on there?
    A. (Examining.)
    No, because that one is blurred. There is a couple that you can make out the month. These you can make out the months on.
    This one you can. This one you can't. And you can't that one really. I believe this one is May.

4. Appellant makes two other contentions with regard to photographic showing. The two bank tellers who witnessed the robbery were taken to police headquarters on the afternoon of the robbery. They looked through an album of approximately 500 polaroid color snap shots of persons previously arrested on robbery charges, but made no identifications. Appellant had been arrested on a previous robbery charge and at that time his picture was

Appellant's other basis for reversal is that the trial court assertedly abused its discretion by refusing to sever his trial from that of a co-defendant. The co-defendant, Coles, had not been positively identified by the bank teller. Appellant asserts that Coles should have been tried separately, since his interest would be served by stressing the bank teller's credibility as an eyewitness by reference to her inability to make a positive identification in his case. On the other hand, appellant and the remaining co-defendant had an interest in attacking the teller's credibility.[5]

Since the three defendants were charged with the commission of the same crime, joinder of their cases at trial was authorized by Rule 8(b) of the Federal Rules of Criminal Procedure. Whereas Rule 14 recognizes that severance may be required where joinder tends to prejudice one or both of the co-defendants, the trial judge has been given wide latitude in this area. *See, e.g.,* Baker v. United States, 329 F.2d 786 (10th Cir. 1964). The Ninth Circuit in Parker v. United States, 404 F.2d 1193, 1196 (1968) has said that

[joinder] expedites the administration of justice, reduces the congestion of trial dockets, conserves judicial time, lessens the burden upon citizens who must sacrifice both time and money to serve upon juries, and avoids the necessity of recalling witnesses who would otherwise be called upon to testify only once.

In order to demonstrate abuse of discretion by a trial judge, one must show more than the fact that co-defendants whose strategies were generally antagonistic were tried together. Robinson v. United States, 93 U.S.App.D.C. 347, 210 F.2d 29 (1954). At the very least, it must be demonstrated that a conflict is so prejudicial that differences are irreconcilable, and "that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty." Rhone v. United States, 125 U.S.App.D.C. 47, 48, 365 F.2d 980, 981 (1966). Appellant has not demonstrated that prejudice in this degree was present, and we cannot say that the generous bounds of discretion traditionally accorded the trial judge in this context were unacceptably exceeded.

Affirmed.

taken for the purposes of this album. Appellant argues that his picture must have been present in the album when it was shown to the two eyewitness bank tellers, and that they must have been unable to identify him at that time. Appellant then takes a contrary tack and asserts that one reason the second showing produced an identification was that his image had been indelibly imprinted on the teller's mind, not from the robbery, but from the first showing.

While the police were unable to say positively whether these pictures were among those in the album shown to the tellers, they did state that it was the normal practice to remove pictures from the album during an investigation. Hence, the police believe it likely that these pictures were in the hands of the officers who were investigating the crime involved in this appeal, and who, on the basis of an informant's tip, arrested six suspects, including appellant, later that day. The explanation of the police as to the absence of the four pictures is plausible; and, in any event, there is nothing to suggest that that exhibition was unduly suggestive.

5. Both co-defendants were convicted and appealed, but their appeals were abandoned before argument.