**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Pedro M. MARTINEZ et al., Defendants-Appellants.**

**No. 71-1673.**

United States Court of Appeals,
Fifth Circuit.

Sept. 11, 1972.

William G. Earle, Kelly, Black, Black & Kelly, P. A., Miami, Fla., for Martinez.

George D. Gold (Court appointed), Pozen, Pestcoe, Gold & Gold, Miami, Fla., for Walters.

Joseph A. Varon, Varon & Stahl, P. A., Hollywood, Fla., John W. Prunty, Miami, Fla., for Berman.

Edward M. Kay, Hollywood, Fla., for Berman.

Robert W. Rust, U. S. Atty., Neal R. Sonnett, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before WISDOM, GOLDBOLD and RONEY, Circuit Judges.

RONEY, Circuit Judge:

We affirm the convictions of all three defendants for conspiracy and possessing securities stolen from the mails. 18 U.S.C. §§ 371, 1708, and 2.

$500,000 worth of Chesapeake and Potomac Telephone Company bonds were shipped by registered mail from Bankers Trust Company of New York to First National Bank of Boston. They never arrived. Eleven months later the same debentures were delivered to Jefferson National Bank of Miami Beach in connection with a purchase for which Jefferson was to act as escrow agent. A check on the validity of the securities resulted in the F.B.I. and postal inspectors being informed. This prosecution resulted. Martinez, Walters, and Berman were each convicted of conspiracy to receive and possess securities stolen from the mails and of the substantive offense of receiving and possessing securities stolen from the mails.

It is unnecessary to recite the details. A general view of the evidence finds defendant Berman discussing with other co-conspirators the disposition of stolen securities, among which were the Chesapeake and Potomac bonds. Subsequently, defendant Martinez opened an account at Jefferson National in the name of Associated Insurance Investors, Inc., a corporation for which Martinez and defendant Walters were listed as officers, and "care of Bernard Berman" was listed as an address. An accounting firm was asked to prepare a balance sheet for Associated which they were told was needed in order for Associated to purchase an English insurance company. The balance sheet reflected $500,000 as "funds held in escrow, purchase Pendragon Company," which figure was supplied by Martinez. A check for $50,000 was drawn on the Associated account in Jefferson National payable to the order of Martinez, signed by both Martinez and Walters. The check was endorsed in exchange for a cashier's check payable to Bernard Berman, which he cashed. He gave the $50,000 to Robert Cardillo, who together with Vincent Teresa, was in possession of the stolen securities involved in the first conversations with Berman. Three days later

the bonds were delivered to Jefferson National with escrow and other documents concerning the purchase of Pendragon. Thereupon the validity check was made and the stolen character of the bonds was discovered.

Each defendant asserts different grounds for reversal.

## BERMAN

Appellant Berman raises two issues on his appeal: *first*, that prejudicial remarks by the prosecutor in his closing argument violated appellant's right to a fair trial; and *second*, that testimony of a government witness was inadmissible and destroyed appellant's character before his character was placed in issue.

### (1) *Prosecutor's Remarks*

█ During the course of his closing argument, the prosecutor remarked:

"Because old lawyer Berman was fixer lawyer Berman and old lawyer Berman's purpose in the entire conspiracy was to arrange to get the legal maneuvering set up, the corporate set up to satisfy the British Board of Trade."

No objection was made at the time to the prosecutor's remarks. Later in the argument counsel for Berman, while making another objection, as an afterthought, made a delayed objection to the use of the term "fixer." The court then instructed the jury that it was to disregard any reference to the term "fixer," was to base its decision solely on the evidence in the case and the law, and was not to base its decision on characterizations by the government attorney.

Considering the prosecutor's statement as a whole and the court's cautionary instructions given when requested, we find no reversible error.[1]

Further in his argument, the prosecutor made two references to Berman's having lied on the stand and a government witness having told the truth. Counsel for Berman failed to object to

these remarks at the time. He urges now, however, that the prosecutor was stating his individual belief in the guilt of the accused and that such belief was based on evidence not before the jury.

█ The law is clear that a prosecutor's remarks cannot imply that evidence not before the jury implicates the defendant. McMillian v. United States, 363 F.2d 165 (5th Cir. 1966). Nor can a prosecutor vouch for a witness by suggesting that the government would not use a witness unless his credibility was confirmed. Gradsky v. United States, 373 F.2d 706 (5th Cir. 1967). We do not find either infirmity in the present case. In *McMillian* we said that a prosecutor may express his belief in the guilt of a defendant if such belief is based solely on the evidence introduced and the jury is not led to believe that other evidence justifies that belief. We read nothing more in the prosecutor's statement than an attempt to point out the apparent inconsistencies in Berman's testimony.

### (2) *Testimony of Government Witness*

The government made an *in camera* proffer that the testimony of Vincent Teresa would deal with conversations and transactions that took place in early 1969, approximately three months before the date the indictment alleged to be the beginning of the conspiracy. The court allowed such testimony to go to the jury for the purpose of showing knowledge and intent on the part of Berman.

█ The general rule is that evidence of prior criminal activity of a similar nature is inadmissible to prove the commission of a later offense. Michelson v. United States, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948). There is, however, an exception to the general rule. When "intent and knowledge are essential elements of the crime for which the defendant is being tried, evidence of other transactions, even though

1. Berman cites to us a case in which the prosecutor's remarks were clearly prejudicial. See Getchell v. United States, 282 F.2d 681 (5th Cir. 1960). But compare United States v. Crane, 445 F.2d 509 (5th Cir. 1971).

criminal in nature, is admissible to prove the necessary criminal intent or guilty knowledge, if the transactions are so connected with the offense charged that they serve to show a general pattern." Gilstrap v. United States, 389 F. 2d 6, 9 (5th Cir.), cert. den. 391 U.S. 913, 88 S.Ct. 1806, 20 L.Ed.2d 652 (1968).

Berman says that the theory of the government's case was that he had participated in a complicated plan to use stolen securities as collateral for the purpose of buying and maintaining a British insurance company but that Teresa was barred from referring to the insurance company scheme because the trial judge had determined that such reference would be prejudicial to one of the other co-defendants. Under these circumstances, Berman argues that Teresa's testimony was irrelevant and prejudicial to him in that there was no similarity as far as scheme or plan in that testimony and the evidence adduced at trial by the government relative to the method used to dispose of the securities.

■ Briefly stated, Teresa testified to conversations and transactions between Berman, himself, and another about the disposition of the stolen securities. This testimony was directly related to the crimes charged against Berman in both point of time [2] and factually.[3] Simply because Teresa was not allowed to testify as to one point of the discussion, i. e., the buying of a British insurance company, does not vitiate the relevance and probative value of the evidence given as to Berman's intent and knowledge in connection with his participation and involvement in the overall plan or scheme.

This testimony comes well within the *Gilstrap* exception admitting such evi-

dence of a general pattern of criminal activity for the purpose of showing intent and knowledge.

## WALTERS

Appellant Walters raises four issues: *first,* insufficiency of the evidence to link him to the conspiracy; *second,* the testimony of government witness Teresa was so prejudicial to him that a severance should have been granted; *third,* error in refusing to give an "aider-abettor" instruction to the jury; and *fourth* insufficiency of evidence of a conspiracy involving Walters prior to the admission against him of a statement made by a co-conspirator.

### (1) *Sufficiency of Evidence*

■ In deciding the sufficiency of the evidence we must take the view most favorable to the government. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). And, of course, when the evidence relied on is circumstantial, we must determine whether the trier of fact might reasonably find that the evidence excludes every reasonable hypothesis except that of guilt. United States v. Sidan-Azzam, 457 F.2d 1309 (5th Cir. 1972).

The evidence shows the following:

Walters was the Secretary-Treasurer of Associated Insurance Investors, Inc., a Nevada corporation, of which Martinez was President. Walters signed a trust agreement between Associated and Jefferson National Bank of Miami Beach in which some stolen securities were assigned to Jefferson National as Trustee. He signed an attorney-in-fact agreement dated May 8, 1969, between Associated and Berman wherein Berman was authorized to exercise the power of direction un-

---

**2.** Teresa testified that the conversations with Berman commenced within two or three months of the beginning date of the conspiracy charged in the indictment.

**3.** Teresa testified that (1) the conversations dealt with stolen stocks and bonds, (2) Bobby Cardillo was present and took part in the conversations, (3) the for-

mation of a phony corporation was discussed, (4) they discussed the naming of the corporation, and (5) they considered naming the corporation Cal & Co., which was one of the street names on the stolen bonds. This testimony was substantially corroborated by other evidence introduced at trial.

der the Trust Agreement. Associated's lease of a suite was signed by Walters. His mortgage broker office was maintained in Associated's suite. A check drawn on Jefferson National payable to check drawn on Jefferson National payable to Martinez was signed by Walters. He signed the corporate resolutions of Associated dated April 14, 1969, and filed with Jefferson National. Walters made three trips to Alaska with Martinez and a co-conspirator, who paid for his passage. He was one of the officers of Associated present when Berman first met with them.

Viewed most favorably to the government, this evidence against Walters was such that the jury could decide beyond a reasonable doubt that he was involved in the conspiracy.

### (2) Teresa's Testimony

Teresa testified as to conversations between himself, Berman, and others. This testimonial evidence was introduced against Berman. The court instructed the jury on three occasions—all critical points in the trial—not to consider Teresa's testimony against any defendant but Berman. In these circumstances, we think it was entirely within the jury's capacity to follow the court's instructions. Blachly v. United States, 380 F.2d 665 (5th Cir. 1967).

Separate trials are not automatically required where some of the evidence is not admissible against a particular defendant. Opper v. United States, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954).

A motion for severance is addressed to the sound discretion of the trial court. The exercise of that discretion will not be overruled unless it was clearly abused. United States v. Dryden, 423 F.2d 1175 (5th Cir.), cert. den. 398 U.S. 950, 90 S.Ct. 1869, 26 L.Ed.2d 290 (1970).

Considering the record as a whole, we do not find an abuse of discretion by the trial court in denying Walters' motion for severance.

### (3) "Aider-Abettor" Instruction

Walters requested an instruction spelling out the requirements for a conviction as an aider and abettor, citing Moore v. United States, 356 F.2d 39 (5th Cir. 1965).

The court was not in error in denying this charge with the note that this was not in issue. Walters was not charged as an aider and abettor, but as a conspirator. Once it is established that a person is a member of a conspiracy, any act by a co-conspirator in furtherance of the conspiracy is attributable to him. Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). In order to convict Walters of the substantive count, it was not necessary to prove that he aided and abetted the possession of the securities. The government need prove only that Walters' co-conspirator possessed the securities in furtherance of the conspiracy.

### (4) Evidence of Co-Conspirator's Statement

Walters' last contention is that there was not sufficient evidence of a conspiracy involving him at that point in the trial when a government witness, Kalinsky, was allowed to testify about a statement made by an alleged co-conspirator.

It is true that hearsay statements are inadmissible when no independent evidence links the declarant to the defendant or to the conspiracy. Glasser v. United States, *supra*; United States v. Bey, 437 F.2d 188 (3rd Cir. 1971); United States v. Calabro, 449 F.2d 885 (2nd Cir. 1971); United States v. Geaney, 417 F.2d 1116 (2nd Cir. 1969); United States v. Borelli, 336 F.2d 376 (2nd Cir. 1964). However, Kalinsky was the government's last witness of substance. Prior to his testimony the court had before it substantially all of the evidence against Walters which we have held was sufficient to show that he was involved in the conspiracy. This

meets the test required for admission of Kalinsky's testimony.

## MARTINEZ

Appellant Martinez asserts the following grounds for reversal: (1) the government's proof exceeded the confines of its Bill of Particulars; (2) he was prejudiced by being tried with Berman; (3) the government did not prove that Martinez knew the securities were stolen from the mail; (4) the court's instruction on inference from possession should not have been given; and (5) the indictment returned solely on the basis of hearsay evidence should have been dismissed.

**(1)** *Proof Beyond Bill of Particulars*

Martinez contends that the government's evidence showed that witness Teresa was a co-conspirator. Since Teresa was not so named in the Bill of Particulars, the argument is that the proof exceeded the confines of the Bill.

▆ The purposes of a Bill of Particulars are to inform the defendant of the nature of the charge against him with sufficient precision to enable him to prepare his defense, and to avoid or minimize the danger of surprise at trial. United States v. Bearden, 423 F.2d 805 (5th Cir.), cert. den. 400 U.S. 836, 91 S.Ct. 73, 27 L.Ed.2d 68 (1970). Martinez claims surprise.

▆ Teresa's testimony was introduced by the government for the sole purpose of showing intent and knowledge on the part of Berman, and the testimony was so limited by the court.

The record reflects that the prosecutor did not know of Teresa's existence until the day the trial commenced, and Teresa was not interviewed until the eve of his testimony. The prosecutor then informed defense counsel of his intention to call Teresa as a witness, turned over to defense counsel material for use in cross-examination, and proffered Teresa's entire testimony.

It is obvious that the prosecutor could not have supplied Teresa's name before he had knowledge of his involvement.

The issue then is whether Martinez' substantial rights were prejudiced in any way by the court's allowing Teresa to testify. See Wong Tai v. United States, 273 U.S. 77, 47 S.Ct. 300, 71 L.Ed. 545 (1927).

The prosecutor informed counsel of his intention to call Teresa as soon as practicable after learning of his existence and his relationship to Berman. Materials for cross-examination of Teresa were given counsel and Teresa's entire testimony was proffered during an extended *in camera* hearing. The testimony was considerably limited by the court.

In these circumstances we do not think that Martinez' substantial rights were prejudiced by the court's allowing Teresa's testimony.

**(2)** *Severance*

Martinez alleges he was prejudiced by being tried with Berman because (a) their defenses conflicted, (b) the jury was not able to avoid considering Teresa's testimony against Martinez, and (c) the prosecutor in rebuttal used Teresa's testimony to prove one of the essential elements of the crime against Martinez.

▆ Rule 14 of the Federal Rules of Criminal Procedure provides that:

"If it appears that a defendant . . . is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials or counts, or grant a severance of defendants or provide whatever other relief justice requires."

The trial court's decision to deny a motion for severance will not be overturned absent an affirmative showing of abuse of discretion. Blachly v. United States, *supra.* Speculative allegations as to possible prejudice do not mean the burden of such affirmative showing. See Gordon v. United States, 438 F.2d 858 (5th Cir. 1971).

▆ In support of his claim of prejudice, Martinez says in his brief that if

he had testified, his testimony would conflict with the testimony of Berman on certain facts in the case. He argues that such conflict prevented him from testifying in his own behalf. This argument is speculative. In United States v. Robinson, 139 U.S.App.D.C. 286, 432 F. 2d 1348, 1351 (1970), the court said:

> "In order to demonstrate abuse of discretion by a trial judge, one must show more than the fact that co-defendants whose strategies were generally antagonistic were tried together . . . . At the very least, it must be demonstrated that a conflict is so prejudicial that differences are irreconcilable, and 'that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty.'"

The logical significance to be drawn from *Robinson* is that conflicts among defendants do not *per se* require severance. Martinez is thus left to show affirmatively an abuse of discretion on the part of the trial court in denying severance. We do not think he has met that burden.

Martinez' claim that the jury was incapable of considering Teresa's testimony only against Berman is unmeritorious for the reasons given in our discussion of Walters.

It is claimed that the prosecutor used the testimony of Teresa against all three defendants in his rebuttal argument. It is the court's job to inform the jury as to what evidence should be considered against a defendant. The court fully instructed the jury regarding the effect of Teresa's testimony.

### (3) *Knowledge That Securities Stolen*

Martinez suggests that this Circuit requires proof of knowledge on his part that the securities were actually *stolen from the mails* in order to convict him of violating 18 U.S.C. § 1708. He relies principally on our decision in Allen v. United States, 387 F.2d 641, 642 (5th Cir. 1968), wherein Judge Bell wrote:

> "To procure a conviction in a case such as this the prosecution must show possession on the part of the de-

fendant, that the letter was stolen from the mails, and that the defendant knew the letter and its contents had been *so* stolen."

The argument is made that the word "so" modifies "stolen from the mails" thus making knowledge that the securities were stolen from the mail a legal requirement.

 This was not the import of the *Allen* decision. We held in *Allen* that there was no evidence that the defendant or anyone else had actually stolen the letter from the mails. Martinez' situation is different. There was sufficient evidence adduced at the trial to show that the securities were actually stolen from the mails. This being so, it was only necessary to show that Martinez had possession of the securities, knowing them to be stolen. This principle is set forth in United States v. Hines, 256 F.2d 561 (2nd Cir. 1958), which we cited favorably in the *Allen* case. *Hines* involved a factual situation similar to the case at bar and clarified the law with regard to Section 1708 as follows:

> "The defendant claims that these facts do not constitute a violation of 18 U. S.C. § 1708, which, he contends, requires that the accused know that the mail matter was stolen from an authorized mail depository, and not just stolen. Prior to 1939, the statute supported the defendant's argument. * * * But in that year the statute was amended to require only that the defendant know that the mail matter in his possession was stolen. 53 Stat. 1256. And Congress passed this amendment to alleviate the almost impossible burden cast on the government under the prior Act to show that an accused knew how the mail in his possession was stolen. H.R.Rep.No. 734, 76th Cong., 1st Sess.; Sen.Rep. No.864, 76th Cong., 1st Sess.

To secure a conviction here, therefore, the prosecution had to show that the check actually had been stolen from the mails and that the defendant un-

lawfully possessed it, knowing that it was stolen."

## (4) *Instruction Concerning Possession of Recently Stolen Property*

The court instructed the jury that it could draw an inference as to knowledge of theft from the unexplained possession of recently stolen property. Martinez alleges error in this charge on the basis that the eleven months between the mailing of the securities and his alleged possession is not indicative that the securities had been recently stolen. The argument continues that such a hiatus vitiates, as a matter of law, the rational basis on which the jury could make the proper nexus between unexplained possession and knowledge of theft. He cites the following language from Hale v. United States, 410 F.2d 147, 150 (5th Cir. 1969):

> "The inference allowed by unexplained possession is a powerful one. It is a substitute for direct proof of guilty knowledge and courts, both trial and appellate, should proceed with extreme care in determining whether the evidence sufficiently establishes a basis for the inference."

After giving this cautionary admonition and stating that the issue of what constitutes "recent" is a jury question, the court goes on to suggest the standards under which the inference may be allowed:

> "There is a likewise certain period after which an inference of *guilty knowledge* cannot be rationally inferred from unexplained possession. Whether this period has expired is a question for the trial court to determine before giving the case to the jury. In reaching its determination, the trial court need not be oblivious to other evidence pointing to the accused's guilt; to the contrary, it is free to judge the reasonableness of the inference in the context of all the evidence. Approaching the case *sub judice* in this manner, we conclude that the trial court did not err in allowing the jury to infer guilty knowledge from

the appellant's unexplained possession of the automobile. To be sure, the lapse of six months and nineteen days substantially weakened the inference of guilty knowledge, but when the appellant's unexplained possession is analyzed in the context of a factual setting as fraught with suspicion as the one in this case, the inference is strengthened and doubt as to its reasonableness fades. Accordingly, we hold that the evidence against the appellant fairly included the inference to be drawn from unexplained possession of recently stolen property, and that the appellant's motion for a directed verdict of acquittal was properly denied." 410 F.2d at 151.

Under the *Hale* standards and considering the evidence against Martinez which was before the court, we do not find error in the instruction.

## (5) *Indictment Based on Hearsay*

Prior to trial and at trial, Martinez moved to dismiss the indictment because it was based on hearsay testimony. In the alternative, he requested a hearing on its validity. After consideration, the court denied the motions without a hearing.

We view this claim as an attempt to litigate the sufficiency of the evidence presented to the grand jury. This has been foreclosed by the Supreme Court in Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956).

The judgment as to each appellant is affirmed.

Affirmed.

GODBOLD, Circuit Judge (specially concurring):

I concur in the result and add one point.

The court charged on the familiar rule that if a defendant is in possession of recently stolen property and does not explain his possession the jury is entitled to infer that he has knowledge of its stolen character. As to the defendant Martinez this charge just barely escapes being error, considering the lapse of

eleven months between the disappearance of the securities and Martinez's transactions relating to them. But the court then charged that if the government had shown: (a) mailing and non-receipt of the securities; (b) possession of them by a defendant; and (c) knowledge by the defendant that they were stolen, then the jury could infer that the securities were stolen *from the mails.* Martinez correctly asserts that this charge was error.

There is no substantial rational relationship between possession of stolen goods with knowledge of their illegal character and the facts surrounding the *manner* in which they were stolen. The circumstances of dealing with stolen goods have a rational relationship to knowledge of their illegal character— surreptitious dealings, changed names, sales not in regular course of business, discount prices, absence of title documents, and many other circumstances will tend to put a possessor on notice that he is dealing with illegal goods. But there is no such likelihood that a course of dealings will reveal to him the time, place and manner of the theft. And inquiry into the subject is unlikely. The less the dealer knows the better he will like it. As Judge Learned Hand put it in United States v. Bollenbach, 147 F.2d 199, 202 (2d Cir.), rev'd on other grounds 326 U.S. 607, 66 S.Ct. 402, 90 L.Ed. 350 (1946):

> It is of course possible that a man, dealing in stolen securities, and knowing or suspecting that they have in fact been stolen, may inquire where the seller got them; but it is more likely that he will not wish to do so. Inquiry is apt to add to that information any evidence of which he will at all hazards wish to suppress; it will be safer to take the securities as they are presented than to meddle into their source.

The tenuous nature of the "stolen from the mails" inference is even more attenuated than usual in the present case because one of the underpinnings —knowledge that the securities were *stolen*—was itself an inference that the jury was allowed to draw at the very outer limits of its rationality. This case is one of those rare ones in which the plaint of "inference on an inference" is substance rather than shibboleth.

The erroneous instruction was, however, error without injury as to Martinez. As the majority point out, Martinez's guilty knowledge was required to be only of "theft" and not, "theft *from the mails.*" The inference erroneously permitted was only of "from the mails," a matter clearly established by other evidence.