489 F.2d 818
 UNITED STATES of America, Plaintiff-Appellee,
v.
Steven Harry EASTWOOD, Defendant-Appellant.
No. 73-2417 Summary Calendar.*
*Rule 18, 5 Cir.; see Isbell Enterprises, Inc.
v.
Citizens Casualty Company of New York et al., 5 Cir., 1970,
431 F.2d 409, Part I.
 United States Court of Appeals, Fifth Circuit.
 Dec. 27, 1973, Rehearing Denied Jan. 25, 1974.
 
 Joseph Neves Marcal, III, New Orleans, La., for defendant-appellant.
 Gerald J. Gallinghouse, U.S. Atty., Mary Williams Cazalas, Asst. U.S. Atty., New Orleans, La., for plaintiff-appellee.
 Before BROWN, Chief Judge, and DYER and SIMPSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 Appellant and co-defendant Bruno were convicted under 21 U.S.C.A. 841(a)(1) for unlawful possession with intent to distribute a controlled substance-- approximately 100,000 tablets of d-methamphetamine hydrochloride. Appellant seeks to have his conviction reversed challenging the District Court's exercise of its discretion in (1) refusing to ask the prospective jurors a question requested by appellant's counsel on voire dire, (2) declining to declare a mistrial after government witnesses violated the Court's sequestration order, and (3) denying appellant's motion for severance after counsel for co-defendant raised the issue of entrapment. We affirm.
 
 Voire Dire
 
 2
 In selecting the District Court requested that any juror who did not think that he or she could decide the case without bias or prejudice should so inform the Court. One of the prospective jurors then stated that
 
 
 3
 'I am a counselor at Walker School and I am running two therapy groups this year. Our school is very heavy on the problem of dope and I don't think that I could render a proper decision. This is what I work with day in and day out, addicts, kids and we try to watch pushers and this kind of stuff.'
 
 
 4
 The Court immediately excused this juror.
 
 
 5
 Following this incident, counsel for co-defendant requested the Court to ask the prospective jurors
 
 
 6
 'Have you or anyone in your immediate family, to your knowledge, ever taken an amphetamine tablet, nodose pill or any other type of diet pill or stay-awake tablet?'
 
 
 7
 The Court denied the request after the Assistant United States Attorney objected.
 
 
 8
 The scope of the examination of prospective jurors on voire dire is committed to the sound discretion of the District Court. But, of course, a refusal to inquire into a particular subject which affects the basic fairness of the trial is not accepted. Ham v. South Carolina, 1973, 409 U.S. 524, 93 S.Ct. 848, 35 L.Ed.2d 46; United States v. Gassaway, 5 Cir., 1972, 456 F.2d 624. See also F.R.Crim.P. 24(a).
 
 
 9
 Since we do not believe that the refusal to propound the requested inquiry could affect the basic fairness of appellant's trial where the District Court posed careful though general questions pertaining to the possibility of bias to the prospective jurors, we conclude that the District Court did not abuse its wide discretion in conducting the voir dire. Ham, supra.[1]
 
 Sequestration
 
 10
 At the beginning of the trial, the District Court declared that 'all witnesses in this case will stay out in the hall until called. Do not discuss this case with anyone except the lawyers. Particularly, do not discuss it among yourselves, between one another.'[2]
 
 
 11
 Later the same morning, a member of the jury was seen talking in the hall with a federal narcotics agent, who was to be a government witness in the case. The juror told the Court that he had worked with the agent four years earlier and did not know that he was now a narcotics agent. The juror was dismissed and replaced by one of the alternates.
 
 
 12
 Appellant's counsel instructed one of his own witnesses to sit in the hall and observe whether any of the government's witnesses conversed. The witness reported back that there had been some conversation and appellant's counsel relayed this information to the Court.
 
 
 13
 After placing the parties involved under oath, the Court inquired into the incidents. The incidents involved Danny Valliere and Bill Burandt, government witnesses who had pleaded guilty after originally having been indicted along with appellant.
 
 
 14
 An employee of the Clerk's office who was an acquaintance of Wallier's saw Valliere in the hall and asked him why he wasn't in the courtroom. Valliere said he was not allowed in the courtroom while other witnesses were testifying. As this clerk's employee entered the courtroom, Valliere admits having said 'you can let me know what's going on.' He insisted that this was simply a figure of speech. There was no testimony that Valliere ever talked to this employee after he entered the courtroom.
 
 
 15
 Valliere's wife had been observed in the courtroom over a two day period. When asked whether she had discussed the proceedings with her husband she replied
 
 
 16
 'not in detail. I told him, like I told him who was there . . . and I told him that they were picking the jury . . .. I didn't tell him what was being said in the courtroom.'
 
 
 17
 Valliere testified that he did not discuss the courtroom proceedings with his wife.
 
 
 18
 When Burandt finished testifying and left the courtroom, he encountered Valliere in the hall and apparently said 'I can't talk here.' The two proceeded down the hall where they encountered the Assistant United States Attorney who was trying the case. The three then ate lunch together. The Assistant United States Attorney testified that he discussed Valliere's future testimony with him but Burandt's previous testimony was not mentioned.
 
 
 19
 Valliere admitted that he was aware of the sequestration rule before any of these incidents occurred. After the Court heard testimony on these incidents, appellant moved for a mistrial. The Court denied the motion noting
 
 
 20
 'Well I don't any of it. These witnesses are critical witnesses, and they must be separated, and that means separate in every sense of the word, and they have not been dept separated. The wife has been coming in here and sitting and listening to evidence and this, I think, should have been avoided and must be avoided from now on.
 
 
 21
 However, I don't think that there is enough to grant a mistrial. I don't think any harm has been done, because I don't think there was enough talk.'
 
 
 22
 At the outset, the determination of whether to sequester witnesses at all is a matter for the District Court's discretion. See United States v. Ruacho-Acuna, 5 Cir., 1971, 440 F.2d 1199. The appropriate remedy for breach of a sequestration order is also committed to the sound discretion of the trial court. Holder v. United States, 1893, 150 U.S. 91, 14 S.Ct. 10, 37 L.Ed. 1010.[3]
 
 
 23
 Whether to declare a mistrial is also a matter within the District Court's discretion. United States v. Pritchard, 5 Cir., 1969, 417 F.2d 327. We think that the District Court in the sound exercise of its discretion could fairly conclude that none of these incidents considered individually or in their totality provided sufficient opportunity for prejudice to warrant a mistrial.
 
 Severance
 
 24
 At the commencement of the trial, appellant's counsel informed the Court that he might make a motion for severance at a latter date if it appeared that codefendant's strategy of defense might prejudice appellant. Appellant did not intend to raise a defense of entrapment but rather intended to maintain, and did so maintain, that he had never intended to engage in an actual sale of narcotics but was instead under the impression that he was a party to a mere bogus sale-- 'a rip-off.'
 
 
 25
 In his opening argument, counsel for co-defendant implied that appellant and co-defendant may have been 'induced' to come to New Orleans by the prospect of the illegal narcotics transaction proposed by a government agent. Appellant made and the Court denied a motion for severance at this time.[4]
 
 
 26
 Shortly thereafter counsel for co-defendant suggested that the Government had 'entrapped' co-defendant into participating in the transaction. Appellant alleges that counsel for co-defendant further emphasized the possibility of entrapment in his cross-examination of Burandt by focusing on the number of times that a Government agent had approached the witness concerning the possibility of a narcotics sale as well as the continual escalation of the number of pills that the agent desired to obtain.
 
 
 27
 Appellant also points out that the prosecutor referred to the statement concerning 'inducement' in counsel for co-defendant's opening argument in the process of cross-examining co-defendant.
 
 
 28
 When co-defendant finally took the stand, his testimony did not support a defense of entrapment. While counsel for co-defendant mentioned entrapment, the record suggests that he did not really pursue it as a line of defense. An emtrapment instruction was not given.
 
 
 29
 The disposition of an F.R.Crim.P.Rule 14 motion for severance rests with the sound discretion of the District Court. See United States v. Perez, 5 Cir., 1973, 489 F.2d 51. This ordinarily requires a clear showing of 'the most compelling prejudice against which the trial court cannot protect.' Perez, supra. See United States v. Martinez, 5 Cir., 1972,466 F.2d 679; United States v. Levrie, 5 Cir., 1971, 445 F.2d 429. The failure to grant a severance merely because one co-defendant is relying on a defense of entrapment while another is not does not of itself constitute an abuse of discretion. United States v. Russo, 5 Cir., 1972, 455 F.2d 1225.[5] Appellant has not approached the clear showing of prejudice that is required to establish that the District Court abused its discretion in denying the motion for severance.
 
 
 30
 We find no merit in the contention that appellant's conviction was not supported by the evidence.
 
 
 31
 This case well illustrates the broad discretion necessarily vested in the District Court concerning so many important determinations in the course of a trial. We find no abuse of that discretion.
 
 
 32
 Affirmed.
 
 
 
 [1]
 In Hamm, the Supreme Court held that a state trial Judge did not violate the defendant's constitutional rights by refusing to ask the jury whether they might be prejudiced against people with beards
 
 
 [2]
 The sequestration instruction had been requested both by government and defense counsel
 
 
 [3]
 It has frequently been held that a decision not to disqualify a witness from testifying because he breached a sequestration order was not an abuse of discretion. Holder, supra; Easley v. United States, 5 Cir., 1958, 261 F.2d 276; United States v. Suarez, 5 Cir., 1973, 487 F.2d 236 (1973)
 Breach of a sequestration order may be remedied by the contempt power or by comment by the Court to the jury. Holder, supra; Brasswell v. Wainwright, 5 Cir., 1972, 463 F.2d 1148.
 
 
 [4]
 Appellant requested no curative instructions 'in the hope the jury would overlook this.' Appellant's brief at 30
 
 
 [5]
 See also United States v. Robinson, 1970, 139 U.S.App.D.C. 286, 432 F.2d 1348, 1351
 'At the very least, it must be demonstrated that a conflict is so prejudicial that the differences are irreconcilable, and 'that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty'.'
 See also Baker v. United States, 10 Cir., 1964, 329 F.2d 786, cert. Denied, 379 U.S. 853, 85 S.Ct. 101, 13 L.Ed.2d 56.