UNITED STATES of America, Plaintiff-Appellee,

v.

Frank Ernest BINETTI, Defendant-Appellant.

No. 75–4456.

United States Court of Appeals, Fifth Circuit.

Feb. 18, 1977.

Rehearing Denied March 15, 1977.

Rehearing Granted May 27, 1977.

266

Jackson B. Battle, Tallahassee, Fla. (Court-appointed), for defendant-appellant.

Robert W. Rust, U. S. Atty., Robert L. Andrews, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before BROWN, Chief Judge, GOD-BOLD, Circuit Judge, and MEHRTENS,* District Judge.

MEHRTENS, District Judge:

The defendant appeals from a jury conviction for conspiracy to possess and distribute cocaine in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a) and § 846 (Count I); two counts (II and IV) for knowingly and intentionally possessing with intent to distribute cocaine in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1); and two counts (III and V) for knowingly and intentionally distributing cocaine in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1). We affirm.

Defendant Frank Ernest Binetti had been a real estate agent in Topeka, Kansas. Becoming unemployed, he came to Florida, where he stayed with old acquaintances in Miami and Fort Lauderdale, and spent his time on the beach. He began to frequent a beachfront bar where John King was the

* Senior District Judge for the Southern District of Florida, sitting by designation.

assistant manager, and became friendly with John and his brother Terry.

Adam DeGaglia, special agent for the Drug Enforcement Administration, while working undercover on April 16, 1975, arranged with Terry King to purchase one ounce of cocaine from his brother John that afternoon in a public park in Hollywood, Florida.

When, pursuant to Terry's instructions, DeGaglia walked to the middle of the field, the two King brothers joined him there. The man DeGaglia identified as the defendant did not join them in the center of the field, but remained where he was, some 30 to 70 yards away. DeGaglia testified that King told him that he usually had his bodyguard with him but on that day DeGaglia did not have any contact with the defendant.

About a week later, DeGaglia again met with Terry King to attempt to buy more cocaine. The defendant was there, but he again was not close enough to overhear the conversation between DeGaglia and Terry King concerning the cocaine.

The agent again met John King on May 23rd at a restaurant where King and the defendant were sitting at the counter, eating lunch. When DeGaglia joined them at the counter, he was introduced to the defendant for the first time, and sat down beside the defendant.

The conversation, initially with the defendant in the middle, concerned the quality of cocaine DeGaglia was to receive. The agent expressed dissatisfaction with the first purchase. At some point in the conversation, the defendant suggested that DeGaglia switch stools with him to better enable DeGglia and King to carry on their conversation.

When the three left the restaurant, King and DeGaglia were walking together, with the defendant following a few steps behind. King slipped DeGaglia a cocaine sample in a small glass vial. There was no indication that the defendant had seen the transfer.

DeGaglia, after confirming that the sample he received on the 23rd was of good quality, made an appointment with John King on the 24th to make a quantity buy. An hour late for his appointment, DeGaglia and his companion Agent Thompson arrived at the restaurant. Neither King nor the defendant was there. The agents got back in their car, drove a short distance, saw Binetti at a gas station, sounded the horn and waved to him. The defendant waved back. The agents returned to the restaurant, and shortly after, King drove up with the defendant. The agents left the restaurant and approached King's car. The defendant got out, told DeGaglia "You go with him," meaning DeGaglia to go with King, and also said, "I'll wait here with him," meaning the defendant was to wait with Agent Thompson. King and DeGaglia left. Thompson testified that he then asked the defendant about purchasing heroin. Defendant reportedly said he had not been in touch with his contact lately, but that he had snorted (cocaine) the night before. Meanwhile, King was arrested, and DeGaglia returned and the defendant was arrested.

■ The defendant claims on appeal that the evidence was insufficient to sustain his conviction of conspiracy. In this circuit only slight evidence is required, for purposes of appellate review of conspiracy cases, to connect a particular defendant with a conspiracy, once the conspiracy is shown. *United States v. Murray*, 527 F.2d 401 (5th Cir. 1976); *United States v. Reynolds*, 511 F.2d 603 (5th Cir. 1975); *United States v. James*, 528 F.2d 999 (5th Cir. 1976).

■ Viewing the testimony in the light most favorable to the government, *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), the evidence indicates that the defendant willfully associated himself in some way with the criminal venture; willfully participated in it as something he wished to bring about, and willfully sought by some act to make the criminal venture succeed.

On May 24th, when the agents arrived an hour late, neither King nor defendant was

present. Then, only defendant was spotted. A wave to him was enough for the defendant to arrive with the seller King in a very short time. It was the defendant who provided the directions to the agents—DeGaglia to go with King to conduct their business while he waited with Agent Thompson.

Up to this point, he may have qualified as an innocent person who just happened to be in the wrong place with the wrong people. On the 24th, however, he was waiting near the appointed place for the buyer and on recognition only, produced the seller and gave directions. This evidence, coupled with his presence the day before when the word "coke" was discussed, provided a basis for the jury to find that he knew King was distributing cocaine and that he was a part of the agreement and willfully sought by his acts to make the criminal venture succeed.

■ While mere presence or association is not enough, in and of itself, to establish a person's participation in the conspiracy, *United States v. Oliva*, 497 F.2d 130 (5th Cir. 1974), the defendant's actions here went beyond mere association. Since the commission of the substantive offenses by the King brothers was never seriously disputed, the defendant could be found guilty on all counts.

This application of vicarious liability is supported by this court's rulings in the narcotics conspiracy case of *United States v. Decker*, 543 F.2d 1102 (5th Cir. 1976), where it is stated that:

"While holding one vicariously liable for the criminal acts of another may raise obvious due process objections, see *Park v. Huff*, 506 F.2d 849, 864 [5th Cir. 1975], [Thornberry, J. dissenting], it has received considerable support in this Circuit in the conspiracy context. In *United States v. Apollo*, 476 F.2d 156 (5th Cir. 1973), this court affirmed convictions on both the conspiracy and substantive counts in a marijuana smuggling case.

"In reaching this result, Judge Clark commented:

'It cannot be gainsaid that the viable evidence in this case was skimpy . .

[N]evertheless the evidence . . . was sufficient to support a guilty verdict in regard to Apollo's participation in the conspiracy. Since it was, and since a party to a conspiracy is liable as a principal for all offenses committed in furtherance of the conspiracy while he is a member [citations omitted] the jury was entitled to hold Apollo responsible for the substantive offenses charged in Count Two. 476 F.2d at 162.'

"In accord are: *Park v. Huff*, 506 F.2d 849 (5th Cir. 1975); *United States v. Falco*, 496 F.2d 1359 (5th Cir. 1974); *United States v. Martinez*, 466 F.2d 679 (5th Cir. 1972), cert. denied, 414 U.S. 1065, 94 S.Ct. 571, 38 L.Ed.2d 469; *Roberts v. United States*, 416 F.2d 1216 (5th Cir. 1969). The rule is followed in other circuits as well. See, e. g., *United States v. Wilner*, 523 F.2d 68 (2d Cir. 1975); *Poliafico v. United States*, 237 F.2d 97 (6th Cir. 1956); and *United States v. Montgomery*, 440 F.2d 694 (9th Cir. 1971), cert. denied, 404 U.S. 884, 92 S.Ct. 221, 30 L.Ed.2d 166."

■ The defendant made a motion for a directed verdict of acquittal after the government presented its case. He did not renew this motion after presenting evidence in his behalf. Where a defendant puts on evidence after moving for acquittal at the close of the government's evidence, he waives objection to the denial of the motion by failure to renew it at the close of all the evidence. *United States v. Perez*, 526 F.2d 859 (5th Cir. 1976); *United States v. Phipps*, 543 F.2d 576 (5th Cir. 1976). An exception to the above rule has been suggested where to deny the appeal would further a manifest miscarriage of justice. *United States v. Perez, supra*, at 859 (dicta); *United States v. Phipps, supra*.

■ The evidence implicating the defendant in the conspiracy was directly controverted by that introduced by the defendant challenging his association with the Kings. The jury was faced with a series of credibility choices. For instance, the defendant denied being at the public park on

the 16th. Agents testified that they saw him. He denied knowledge of what was occurring at the restaurant, yet the agents testified that he was sitting between De-Gaglia and King. He denied saying that he had snorted cocaine, as Agent Thompson testified. This court should not disturb the factual choices of the trier of fact. *United States v. Beaver*, 524 F.2d 963 (5th Cir. 1975). The evidence, if believed by the jury, shows that the defendant was aware of the transaction taking place, that he was involved in the sale to the agents, and that he had knowledge about cocaine. Affirmance of the jury's verdict would not result in a "manifest miscarriage of justice."

■ The defendant also assigns as error the admonition of the judge to the jury to weigh the credibility of the defendant's witnesses after he learned that the defense had violated the sequestration rule (Federal Rule of Evidence 615). The witnesses had been advised not to discuss the case with one another during the course of the trial. Yet the defense attorney, the defendant and two witnesses discussed the trial at lunch. The defendant contends that the trial judge's instructions in invoking the rule were unclear, and did not put the defense on notice that it was prohibited to converse outside of the courtroom with the witnesses who had not yet testified. He claims the rule on its face applies only to exclusion of witnesses from the courtroom, and that he was not given the parameters of any expansion of that scope.

The instruction given by the court upon invocation of the rule was sufficient. His remedial action of comment to the jury was within the discretionary power of the court. *United States v. Eastwood*, 489 F.2d 818 (5th Cir. 1973).

■ Although affirmance of Binetti's conviction on one of the five counts carrying identical concurrent sentences does not necessarily moot the issues he raises pertaining to the remaining counts, *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969) the question of whether the concurrent sentence doctrine is applicable in a given case is one that addresses

itself to judicial discretion. In this case prejudice is not apparent and the possibility of adverse collateral consequences appears to be remote. Therefore, we decline as a discretionary matter to reach these issues. *Barnes v. United States*, 412 U.S. 837, 848, 93 S.Ct. 2357, 2364, 37 L.Ed.2d 380, 389 (1973); *United States v. Romano*, 382 U.S. 136, 138, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965); *Hirabayashi v. United States*, 320 U.S. 81, 85, 63 S.Ct. 1375, 1378, 87 L.Ed. 1774, 1778 (1943); *United States v. McDowell*, 539 F.2d 435 (5th Cir. 1976); *United States v. Sanders, et al.*, 538 F.2d 695 (5th Cir. 1976); *United States v. Long*, 537 F.2d 1341 (5th Cir. 1976); *United States v. Crockett*, 534 F.2d 589, 600 (5th Cir. 1976); *United States v. Mendoza*, 433 F.2d 891 (5th Cir. 1970).

There being sufficient evidence to convict the defendant of conspiracy, and there being no error in the district court's rulings, the judgment is affirmed.