UNITED STATES of America,
Plaintiff-Appellee,

v.

Michael Mitchell BEARDEN, Defendant-
Appellant.

No. 26915.

United States Court of Appeals,
Fifth Circuit.

March 3, 1970.

806

Lloyd George Teekall (court appointed), Alexandria, La., for defendant-appellant.

Edward L. Shaheen, U. S. Atty., Q. L. Stewart, Asst. U. S. Atty., Shreveport, La., for plaintiff-appellee.

Before RIVES, BELL and DYER, Circuit Judges.

RIVES, Circuit Judge.

The Grand Jury on October 24, 1967, returned a sixty-five count indictment against Bearden in which he was charged under 18 U.S.C.A. § 656 with misapplication and embezzlement of moneys of the Rapides Bank and Trust Company, located in Alexandria, Louisiana. Prior to the trial twenty-four counts of the indictment, including the twelve counts alleging misapplication of funds, were dismissed. The jury returned a verdict of guilty on each of the remaining forty-one counts. Thereafter the district court judge sentenced Bearden to a total of fifteen years imprisonment.

The Rapides Bank and Trust Company (hereinafter Rapides Bank) in Alexandria, Louisiana, is a member of the Federal Reserve System, and, in addition, its deposits are insured by the Federal Deposit Insurance Corporation.[1] The bank provides normal banking facilities, including a trust department which handles not only the usual personal trust accounts but also bond accounts on various types of bonds, such as school and municipal bonds.

Bearden, an attorney and accountant, was employed by Rapides Bank in September 1959 and placed in charge of the Trust Department. As Trust Officer he was authorized to sign Rapides Bank money orders.

1. Therefore, the banking requirements of 18 U.S.C. § 656 are satisfied.

On December 27, 1966, bank employees, during a normal audit of bank money orders, discovered certain discrepancies in connection with a bank money order signed by Bearden in the amount of $12,104.25. Further examination disclosed that the money order was one of three totaling $42,104.25, which had been purchased with a Winn Parish School Board check. The other two money orders were in amounts of $6,000 and $24,000. The $12,104.25 and $6,000 money orders were used as the basis for deposits to a Rapides Bank checking account entitled "Avoyelles Warehouse Corporation." The bank ledger cards for that corporation reflected that all material pertaining to that account should be directed to Michael Bearden. The $24,000 money order remained outstanding and unaccounted for.

Additional examination on December 27 revealed that the $42,104.25 Winn Parish School Board check was intended for bonds, interest and fees; and although the bank received the check on December 9, 1966, it had not been posted to its proper account.

On December 28, 1966, Bearden was confronted with these irregularities in the presence of the chairman of the board, the president, the cashier, and the two employees who had discovered the discrepancies. Bearden admitted that he had taken the Winn Parish check, converted it into three money orders, and deposited the two money orders for $6,000 and $12,104.25 in the Avoyelles account. He further admitted that he had followed this same procedure with other money orders for approximately one and one-half years since "he was in a bind." From his coat pocket he produced the outstanding money order for $24,000 and stated it represented all the money that was missing.

Bearden then produced two additional Rapides Bank money orders (one for $12,638.58 and the other for $20,000) one of which ($20,000) he claimed represented proceeds of the sale of some stock which he owned and which would more than cover the $18,104.25 which he had deposited to the Avoyelles account from the Winn Parish School Board check. He was allowed to return home on the promise that he would return the next day to help clear up the irregularities attributed to him. Instead, he left the city. Rapides Bank reported the transactions to the FBI, and subsequently a complaint was filed on December 30, 1966, alleging that Bearden violated 18 U.S.C.A. § 656.

Bearden returned to Alexandria on February 21, 1967. While he was gone, Rapides Bank conducted an audit of its Trust Department. The results of the audit revealed apparent losses from various trust accounts. The Grand Jury, on October 24, 1967, returned the sixty-five count indictment against Bearden. During arraignment Bearden entered a plea of not guilty to all counts and advised the court that he would represent himself.

From January 19 through February 5, 1968, Bearden filed motions to quash the indictment, for a bill of particulars, and to produce. On March 10 he requested the appointment of counsel, which request was granted on March 20.

On May 1, 1968, Bearden's counsel filed motions to quash the indictment, for change of venue, for subpoenas duces tecum, and for bill of particulars. On June 7 the district court denied all of Bearden's motions, except the motion that the government produce all documentary evidence which pertained to the indictment and which would be used during the trial.

The government in compliance with this order produced voluminous documentary evidence, with an inventory of the documents, which not only included but exceeded the documents later introduced into evidence. Before the trial twenty-four counts of the indictment, including all misapplication counts, were dismissed. See Rule .48(a), Fed.R. Crim.P. The remaining forty-one counts charged embezzlements totaling $495,169.54. The jury returned a guilty verdict on each of the forty-one counts.

On appeal Bearden makes eleven specific contentions, each of which is briefly discussed.

### (1)

█ Bearden's contention that his counsel should have been permitted to refile all motions made by Bearden during the period he was representing himself is without merit. The record clearly reflects that these motions either were refiled in other forms by court-appointed counsel or were ruled on de novo by the district court after appointment of counsel for Bearden.

### (2)

Claiming that he could not adequately prepare his defense, Bearden requested a bill of particulars under Rule 7(f), Fed.R.Crim.P. The district court denied his motion.

██ The purposes of a bill of particulars are to inform the defendant of the nature of the charge against him with sufficient precision to enable him to prepare his defense, and to avoid or minimize the danger of surprise at trial. United States v. Sullivan, 421 F.2d 676 (5th Cir. 1970); Hickman v. United States, 406 F.2d 414 (5th Cir. 1969); Downing v. United States, 348 F.2d 594, 599 (5th Cir. 1965). *See also* 1 Wright, Federal Practice and Procedure § 129 (1969). Furthermore, the standard for reversal on the denial of a bill of particulars is prejudice or a clear abuse of discretion by the trial court. Wong Tai v. United States, 273 U.S. 77, 47 S.Ct. 300, 71 L.Ed. 545 (1927); Leary v. United States, 383 F.2d 851, 862 (5th Cir. 1967); Downing v. United States, *supra*; Joseph v. United States, 343 F. 2d 755, 756 (5th Cir. 1965).[2]

██ Under the abuse-of-discretion standard, we find no merit in Bearden's contention. Each count of the indictment accused Bearden of violating 18 U.S.C.A. § 656 by embezzling or misapplying a specific amount of funds of Rapides Bank on a specific date. Although we appreciate the difficult burden placed on Bearden's counsel in preparing for trial, the trial court properly denied use of a bill of particulars to identify the documents and records upon which each count of the indictment was founded.[3] As we concluded in Hickman v. United States, *supra* at 415: "Here, the record discloses that appellant was fairly apprised of the Government's theories and the particulars upon which each charge was based. He was entitled to no more."

It should be pointed out that although the trial court denied the motion for bill of particulars, it did order the government to furnish Bearden and his counsel for review and inspection all the documentary evidence which the prosecution would use during the trial. That order was complied with, and the documents and records were reviewed and inspected long before the trial.

### (3)

Bearden contends that the district court erred in denying his motion under Rule 17(c), Fed.R.Crim.P., for subpoenas duces tecum against the Rapides Bank, Avoyelles Wholesale Corporation and Gulf States Real Estate and Development Corporation. However, as ordered by the district court, the government allowed Bearden to inspect and examine all documents which it intended to introduce into evidence.

██ Allowance of a motion for subpoena duces tecum for production of documentary evidence before trial is within the sound discretion of the district court. Gevinson v. United States,

---

2. Clear abuse of discretion will be found only where a defendant was actually surprised or where substantial rights were otherwise prejudiced. United States v. Wells, 387 F.2d 807, 808 (7th Cir. 1967); Downing v. United States, *supra*; see Wright, *supra* § 130, at 295.

3. A bill of particulars may not be used "for the purpose of obtaining a detailed disclosure of the Government's evidence in advance of trial." Downing v. United States, *supra*; Johnson v. United States, 207 F.2d 314, 320 (5th Cir. 1953).

358 F.2d 761, 766 (5th Cir. 1966); *see* Bowman Dairy Co. v. United States, 341 U.S. 214, 71 S.Ct. 675, 95 L.Ed. 879 (1951). In view of Bearden's opportunity to examine the government's documentary evidence before trial and in view of the absence of any showing of necessity[4], we find the district court did not abuse its discretion in denying the motion for subpoenas duces tecum.

### (4)

■ Bearden next contends that the district court erred in denying his motion to dismiss the indictment. The indictment charged Bearden with embezzlement on fifty-three counts and with misapplication of funds in twelve counts. Before the trial the government with consent of the court dismissed the twelve counts alleging misapplication of funds and twelve counts alleging embezzlement. The validity of these counts is therefore not before us.[5]

■ As to the sufficiency of the remaining forty-one counts,[6] it is well settled that an indictment must set forth the offense with sufficient clarity and certainty to apprise the accused of the crime with which he is charged. Russell v. United States, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962); Van Liew v. United States, 321 F.2d 664, 668 (5th Cir. 1963). The sufficiency of an indictment is measured by two criteria: (1) whether the indictment contains the elements of the offense charged and sufficiently apprises the defendant so that he will not be misled while preparing his defense; and (2) whether the defendant is protected against another prosecution for the same offense. Russell v. United States, *supra*, 369 U.S. at 763, 82 S.Ct. 1038; Berger v. United States, 295 U.S. 78, 82, 55 S.Ct. 629, 79 L.Ed. 1314 (1935).

■ In this case we conclude that all remaining forty-one counts of the indictment, except for counts 13 and 15, meet the above criteria. Each count, following the wording of the statute, accused Bearden of embezzling bank funds in violation of 18 U.S.C.A. § 656, and specified the date of the offense, the amount involved and the name of the bank. We agree with the Second Circuit's conclusion in United States v. Fortunato, 402 F.2d 79, 82 (2d Cir. 1968): "In a prosecution under 18 U.S.C. § 656, where the offense is set out in the lan-

---

4. In United States v. Iozia, 13 F.R.D. 335, 338 (S.D.N.Y.1952), Judge Weinfeld formulated the following criteria which the party seking production under Rule 17(c) must meet:

    "(1) That the documents are evidentiary and relevant;

    "(2) That they are not otherwise procurable by the defendant reasonably in advance of trial by the exercise of due diligence;

    "(3) That the defendant cannot properly prepare for trial without such production and inspection in advance of trial and the failure to obtain such inspection may tend unreasonably to delay the trial;

    "(4) That the application is made in good faith and is not intended as a general fishing expedition."

5. Bearden's initial argument is that the misapplication counts were defective and therefore all counts in the indictment were defective. This argument is patently frivolous for even if the misapplication counts were defective, their dismissal has no effect on the validity of the remaining counts in the indictment. Gunville v. United States, 386 F.2d 184, 186 (8th Cir. 1967); United States v. Strauss, 283 F.2d 155, 159 (5th Cir. 1960).

6. Count 1 of the indictment is typical:

    *"Count 1*

    "That on or about December 9, 1966, in the Alexandria Division of the Western District of Louisiana, MICHAEL MITCHELL BEARDEN, then an employee of the Rapides Bank and Trust Company, Alexandria, Louisiana, a member bank of the Federal Reserve System and an insured bank whose deposits were then insured by the Federal Deposit Insurance Corporation, did embezzle and convert to his own use certain monies of said bank, to-wit: the sum of Forty-two thousand one hundred four and 25/100 dollars ($42,104.25). (18 U.S.C. 656)"

The other forty counts are similar, the differences being the dates and amount of funds.

guage of the statute, the omission of the means by which the offense was committed does not render the indictment insufficient." [7]

■ Although we have some doubt as to the sufficiency of counts 13 and 15,[8] we pretermit discussion of these counts, solely as a matter of judicial convenience, under the concurrent sentence doctrine. Hirabayashi v. United States, 320 U.S. 81, 63 S.Ct. 1375, 87 L. Ed. 1774 (1943); see Benton v. Maryland, 395 U.S. 784, 791, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969); United States v. Barsaloux, 419 F.2d 1299 (5th Cir. 1969.[9]

(5)

■ Bearden argues that the district court's failure to elicit positive, verbal responses from the prospective jurors on the failure of the defendant to testify constitutes prejudicial error. This contention is without merit. Because Bearden elected to take the stand and testify in his own behalf, the district court's failure, if error, would be only harmless error under Rule 52(b), Fed.R.Crim.P. Also, the district court did not abuse its discretion under Rule 24(a), Fed.R.Crim.P., in refusing to question each prospective juror *individually* as to whether or not Bearden's fail-

ure to testify would affect his decision. *See* Grogan v. United States, 394 F.2d 287, 291 (5th Cir. 1967); Pinkney v. United States, 380 F.2d 882, 887 (5th Cir. 1967); Bellard v. United States, 356 F.2d 437 (5th Cir. 1966); Stone v. United States, 324 F.2d 804, 807 (5th Cir. 1963); Fox v. United States, 296 F.2d 217 (5th Cir. 1961).[10]

(6)

■ Bearden next contends that the district court erred in not requiring prospective jurors from Winn Parish, Louisiana, to answer affirmatively whether shortages in the Winn Parish School Board bond account would affect their decisions. This contention is also without merit. The record reflects that the court questioned the four prospective jurors from Winn Parish as a group, and asked for a showing of hands, whether a shortage of Winn Parish School Board funds would affect their decisions. This method of questioning was within the court's discretion under Rule 24(a), Fed.R.Crim.P. See cases cited under contention 5, *supra.*

(7)

■ Bearden also contends that the district court erred in permitting the President of Rapides Bank to testify as to the results and findings of investiga-

7. In addition, the indictment is not defective for failing to state that the alleged embezzlement was consummated with intent to injure or defraud the Rapides Bank. *See* Ramirez v. United States, 318 F.2d 155, 157–158 (9th Cir. 1963); *see also* Williamson v. United States, 332 F.2d 123 (5th Cir. 1964).

8. Counts 13 and 15 are identically worded, the only distinguishing characteristic being the number of the count. In a recent decision by this Court, United States v. Panzavecchia, 421 F.2d 440 (5th Cir. 1970), an indictment with three identically worded counts was found insufficient on the ground that the identical counts failed to protect the defendant against another prosecution for the same offense. *See* Russell v. United States, *supra.*

9. In United States v. Laite, 418 F.2d 576 (5th Cir. 1969), this Court noted the ef-

fect of Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969) on the "concurrent sentence" doctrine:
"We do not understand Benton v. Maryland, 395 U.S. 784, 787–791, 89 S.Ct. 2056, 2058–2061, 23 L.Ed.2d 707, 712–713 (1969), to pass upon the continuing validity of the 'concurrent sentence' rule as a rule of judicial convenience, see 395 U.S. at 791, 89 S.Ct. 2056, but simply read that case as holding that the rule presents no jurisdictional proscription to appellate consideration of a concurrent sentence."

10. The court did present this question to the prospective jurors. The court requested a response, through a showing of hands, as to whether the jurors would follow the court's instruction that Bearden's failure to testify should not affect their decisions.

tions and audits of the Bank's accounts. This contention is without merit. The government questioned Robert Bolton, President of Rapides Bank, only about matters which came to his attention as president of the bank and of which he had personal knowledge; for example, the confrontation with Bearden about certain discrepancies in the audit of bank money orders.

**(8)**

■■■ Bearden argues that the district court erred in denying his request to question government witness Charles Fine as to whether members of his immediate family owned stock in the Rapides Bank. Fine testified that he had been a business partner of Bearden in a number of companies, which he identified, in which Bearden had a substantial amount of capital invested. On cross-examination Bearden's counsel questioned Fine whether members of his family owned stock in Rapides Bank. The district court prohibited this line of questioning as irrelevant and immaterial. Bearden's counsel when questioned by the court could not explain the relevancy of his question. We cannot find prejudicial error in the court's refusal to allow this line of questioning.

**(9)**

■■■ Bearden also contends that the district court erred in allowing Exhibits G–1B and G–4B into evidence because of insufficient foundation. We conclude that this contention is without merit. A sufficient foundation was laid before the introduction of both exhibits. Both exhibits are money orders signed by Bearden and taken from his person in the presence of the witness who identified them.

**(10)**

■■■■ Bearden argues that the district court erred in denying his motion for judgment of acquittal. In reviewing a district court's refusal to direct a judgment of acquittal, this Court can reverse a jury verdict of guilty only in the absence of substantial evidence to support it, viewing the evidence in the most favorable light to the government. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1941); Fitzpatrick v. United States, 410 F.2d 513 (5th Cir. 1969). In reviewing the denial of a motion for judgment of acquittal the test is whether a reasonable-minded jury could accept the relevant and admissible evidence, considered in the light most favorable to the government, as adequate and sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt. Weaver v. United States, 374 F.2d 878 (5th Cir. 1967); Curtis v. United States, 297 F.2d 639 (5th Cir. 1961); Lambert v. United States, 261 F.2d 799 (5th Cir. 1958); see 2 Wright, Federal Practice and Procedure § 467 (1969).

In this case the forty-one counts of embezzlement on which Bearden was tried and convicted totaled funds of $495,169.54. The government introduced witnesses who actually performed the audit pertaining to those counts and amounts. Mr. Charles Barber who participated in the audit explained each transaction involved in each of the forty-one counts. The source documents, such as checks or debits, which were supposed to have been deposited in the trust accounts were identified by patrons of the Bank. The government then showed how these source documents were not deposited but, to the contrary, were converted into bank money orders by Bearden, and then deposited into accounts of various businesses which Bearden owned or in which he had an interest. In addition, Barber's testimony disclosed source documents being converted into cash by Bearden.

In testifying, Bearden admitted that the signature on all money orders introduced into evidence was his, admitted that he had deposited money orders in his personal accounts, and admitted converting the source documents into bank money orders.

We find that the evidence was overwhelming against Bearden in this prosecution. See Zamora v. United States, 369 F.2d 855 (10th Cir. 1966). The evi-

dence clearly showed that moneys of the Rapides Bank, a member bank of the Federal Reserve System, were willfully converted by Bearden, an employee of such Bank, with the intent to defraud. A reasonable-minded jury could have easily accepted the relevant evidence as adequate and sufficient to support a finding of guilt beyond a reasonable doubt.

### (11)

Bearden lastly contends that the district court erred in not permitting his counsel to give members of the jury Xerox copies of 18 U.S.C.A. § 656, or to read the statute to the jury. This contention is without merit. The district court, whose duty is to explain to the jury the statute under which a defendant is indicted, Williamson v. United States, 332 F.2d 123, 132 (5th Cir. 1964), acted completely within its discretion in denying this request. The court's instruction to the jury more than adequately explained section 656 and the offense of embezzlement.

We find no prejudicial error in this record; the appellant received a fair trial, and the judgment is

Affirmed.