**UNITED STATES of America,**
**Plaintiff,**

v.

**Byron Alfred BOYD, Jr., Defendant.**

**No. CRIM. H–03–362–01.**

United States District Court,
S.D. Texas,
Houston Division.

March 11, 2004.

David Gerger, David Gerger et al., Houston, TX, Charles Leonard Little, Leander, TX, Robert J. Sussman, Hinton, Sussman et al., Houston, TX, David S.

Krakoff, Beveridge & Diamond, James T. Parkinson, Beveridge and Diamond PC, Washington, DC, Ralph John Dennis, Bettendorf, IA, Alessio D. Evangelista, Beveridge & Diamond PC, Washington, DC, John Russell Rookard, Olalla, WA, Cary M. Feldman and Matthew S. Freedus, Feldesman Tucker et al., Washington, DC, for defendant.

Byron Alford Boyd, Seattle, WA, pro se.

Edward F. Gallagher, U.S. Attorneys Office, Houston, TX, for U.S. Attorneys.

## MEMORANDUM AND ORDER

LAKE, District Judge.

Pending before the court is Defendant Byron Boyd's Opposed Motion to Dismiss (Docket Entry No. 126). For the reasons stated below, the motion will be denied.

### I. *Factual and Procedural Background*

This action was brought against several officials of the United Transportation Union ("the UTU"). The UTU is an international labor union that represents over 125,000 members, including railroad, bus, airline, and mass transit employees and retirees. As a labor organization, the UTU is subject to the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 401, *et seq.* ("LMRDA"). Section 501(a) of the LMRDA imposes several fiduciary duties on UTU's officers and agents, and section 432(a)(4) mandates that the UTU's officers and agents file annual reports disclosing any income or other benefit with monetary value derived from any business dealing with the UTU. Byron Alfred Boyd, Jr., was Assistant President of the UTU for a number of years and was elected International President in 2003.

On December 11, 2003, the Grand Jury returned a second Superseding Indictment (Docket Entry No. 76) against defendants.[1] Generally, the Indictment alleges that Boyd and the other defendants devised and implemented a scheme to defraud the UTU and its membership of their honest services. The scheme involved securing secret cash payments from attorneys who hoped to acquire or maintain a place on the UTU's list of Designated Legal Counsel (DLC). The illicit cash payments were allegedly used to fund defendants' union campaigns and for their personal use.

The Indictment contains the following specific allegations against Boyd:

Count One: Racketeering in violation of 18 U.S.C. § 1962(c), including at least thirty-seven distinct acts of racketeering, including subpredicated acts alleging violations of the Interstate Transportation in Aid of Racketeering Act (18 U.S.C. § 1952), which are in turn based on violations of various state commercial bribery statutes,[2]

Count Two: RICO Conspiracy in violation of 18 U.S.C. § 1962(d),[3]

Counts Three and Four: Mail Fraud in violation of 18 U.S.C. §§ 1341, 1346, and 2,[4]

Counts Five—Fourteen: Embezzlement from a labor union in violation of 29 U.S.C. § 501(c) and 18 U.S.C. § 2,[5]

Counts Fifteen and Sixteen: Witness Tampering in violation of 18 U.S.C. § 1512(b)(2)(A) and 18 U.S.C. § 2.[6]

On February 10, 2004, Boyd filed a Motion to Dismiss all sixteen counts in the

---

**1.** The second Superseding Indictment will henceforth be referred to as "the Indictment."

**2.** Indictment, Docket Entry No. 76 at pp. 11–62.

**3.** *Id.* at pp. 62–98.

**4.** *Id.* at pp. 99–100.

**5.** *Id.* at pp. 101–3.

**6.** *Id.* at pp. 103–4.

Indictment. On February 24, 2004, the Government filed a response (Docket Entry No. 141). On March 2, 2004, defendants filed a reply (Docket Entry No. 147). On March 5, 2004, the Government filed a surresponse (Docket Entry No. 149).

## II. *Standard of Review*

▆▆▆ Federal Rule of Criminal Procedure 7(c)(1) states that an "indictment ... shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." FED. R. CR. P. 7(c)(1). To guarantee protection of a criminal defendant's rights an indictment must "contain[ ] the elements of the offense intended to be charged, 'and sufficiently apprise[ ] the defendant of what he must be prepared to meet[.]'" *Russell v. United States,* 369 U.S. 749, 82 S.Ct. 1038, 1046, 8 L.Ed.2d 240 (1962) (citations omitted). The indictment must "set forth the offense with sufficient clarity and certainty to apprise the accused of the crime with which he is charged." *Kay,* 359 F.3d 738, 741–42 (*quoting United States v. Bearden,* 423 F.2d 805, 810 (5th Cir.1970)). This standard merely requires that the indictment (1) contain the elements of the offense so as to provide the defendant with fair notice of the charges against which he must defend and (2) enable the defendant to plead an acquittal or conviction as a bar against future prosecutions for the same offense. *Id.* (*quoting United States v. Ramirez,* 233 F.3d 318, 323 (5th Cir.2000)). Therefore, if the statutory language of the charged offense "unambiguously sets out all the necessary elements," an indictment that tracks the language of the charging statute is generally sufficient. *United States v. Hagmann,* 950 F.2d 175, 183 (5th Cir. 1991).

Federal Rule of Criminal Procedure 12(b) authorizes motions to dismiss that raise "any defense, objection, or request which is capable of determination without a trial of the general issue." FED. R. CR. P. 12(b). In assessing a motion to dismiss an indictment, the court must "take the allegations of the indictment as true and ... determine whether an offense has been stated." *United States v. Kay,* 359 F.3d 738, 741–42 (5th Cir.2004) (*quoting United States v. Hogue,* 132 F.3d 1087, 1089 (5th Cir.1998)).

## III. *Boyd's Motion to Dismiss Indictment*

Boyd seeks dismissal of Counts One through Sixteen based on various theories of insufficiency.

### A. Honest Services Fraud Scheme Allegations

#### 1. *Boyd's Arguments*

Boyd contends that the facts alleged in the Indictment that purportedly describe an honest services fraud scheme do not amount to a crime as a matter of law because the alleged scheme does not include any allegation of actual or intended harm to the UTU or its membership. Boyd argues that to establish criminal fraud the Government must prove that (1) concealed information was material and (2) the breach of fiduciary duty led to some detriment, either actual or intended. Boyd emphasizes the absence of an allegation that defendants' conduct led to the appointment of incompetent DLCs that caused harm to UTU members or that the alleged breaches of fiduciary duties caused the UTU or its membership economic loss.

Boyd also argues that the scope of the LMRDA's section 432(a)(4) reporting requirement does not encompass the kind of payments alleged in the Indictment, but only requires reporting benefits derived from entities from which the UTU purchases goods or services.[7] Because the

---

**7.** *Id.* at p. 10.

UTU did not purchase goods or services from the DLCs, Boyd argues that the failure to report payments from the DLCs cannot constitute an honest services fraud. Boyd also argues that if the statute can be construed to include the kind of payments alleged in the Indictment, the statute is unconstitutionally vague as applied to him.

Boyd argues that the Government has cobbled together an honest services fraud charge by impermissibly building the following chain of inferences: (1) Defendants solicited illegal campaign contributions in violation of the LMRDA's section 481(g); (2) such violations involved breaches of duties owed to the UTU membership; and (3) such breaches amount to an honest services fraud. Boyd contends that section 481(g) only prohibits contributions from employers, not from the DLCs, who are dues-paying UTU members.

Boyd argues that the LMRDA has its own enforcement scheme that was crafted to give union members the means to remedy election abuses without unnecessary governmental interference in unions' internal affairs. Boyd argues that it is inappropriate to use an alleged violation of a statute that contains a civil enforcement mechanism as the basis for honest services fraud.

For all of these reasons, Boyd asks the court to dismiss Counts One, Three, and Four to the extent that they rely on the theory of an honest services mail fraud scheme. Boyd also contends that if the insufficiently pleaded honest services fraud allegations are dismissed, the remaining allegations in Count One do not support the RICO charges underlying Counts One and Two and that those counts should also be dismissed.

### 2. *The Government's Arguments.*

The Government contends that its use of the honest services fraud statute is not novel, as Boyd suggests. Citing *United States v. Caldwell,* 302 F.3d 399, 408–09 (5th Cir.2002), the Government contends that private employees may be prosecuted for defrauding their employer or principal of the intangible right to their honest services if (1) they breached a duty of honesty or loyalty by fraudulent conduct and (2) the information withheld by the employee is material. The Government argues that it is not required to allege actual harm as part of establishing the materiality of the information that Boyd withheld.

The Government concedes that a breach of fiduciary duties alone would not constitute fraudulent deprivation of honest services. However, the Government argues that the breaches alleged in the Indictment transcend mere violations of LMRDA provisions and are, quoting *United States v. Brumley,* 116 F.3d 728, 734 (5th Cir.1997) (*en banc*), "something close to bribery," that is, the Government alleges bribery in fact.

The Government also argues that materiality can be inferred from the Indictment's explicit allegations. The Indictment alleges that Boyd represented to UTU members that DLCs were chosen solely on the basis of professional acumen and fidelity to UTU members when, in truth, DLCs and the UTU president were financially beholden to one another. Thus, it can be inferred that if UTU members had had this information, the UTU would have acted to reform the DLC program, to expel attorneys on the DLC list, to file lawsuits, and to appoint a board of inquiry, among other things.

The Government further argues that the honest services fraud allegations in the Indictment are not preempted by the LMRDA's civil remedial provisions and cites several cases that acknowledge the propriety of a mail fraud prosecution based on an "intangible rights" theory, *e.g., United States v. DeFries,* 129 F.3d

1293, 1304–05 (D.C.Cir.1997); *United States v. Runnels*, 877 F.2d 481, 492 (6th Cir.1989) (*en banc* ); *United States v. Boffa*, 688 F.2d 919, 930 (3d Cir.1982).

As for Boyd's contention that the Indictment contains offenses that are unconstitutionally vague as applied to him, the Government argues that he must await presentation of proof at trial. Alternatively, the Government reiterates that it is well established that an honest services fraud charge may be based on a defendant's violation of fiduciary duties imposed by statute or regulation.

### 3. *The Court's Conclusion*

Title 18 U.S.C. § 1341 makes it a crime for anyone to use the mails to carry out a scheme to defraud. Section 1346 clarifies that "[f]or the purposes of [the mail fraud statute], the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services." 18 U.S.C. § 1346. To convict Boyd of honest services mail fraud under 18 U.S.C. §§ 1341 and 1346 the Government must prove the following elements:

(1) That the defendant knowingly created a scheme to defraud, that is [the defendant knowingly devised and implemented a scheme to defraud the UTU and its membership of their honest services by securing secret cash payments from attorneys in exchange for a place on the UTU's DLC list];

(2) That the defendant acted with a specific intent to defraud;

(3) That the defendant mailed something. or caused another person to mail something through the United States Postal Services for the purpose of carrying out the scheme; and

(4) That the scheme to defraud employed false material representations.

*See* FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS: CRIMINAL, 2001 Edition. The honest services fraud charges in the Indictment sufficiently allege these elements.

In alleging the honest services fraud charges, the Indictment relies on duties that Boyd owed the UTU and its members under 29 U.S.C. § 501(a) of the LMRDA, Article 16 of the UTU Constitution, 29 U.S.C. § 432(a)(4), and 29 U.S.C. § 481(g). The Indictment's references to these duties identify which honest services the Government alleges that Boyd owed the UTU and its membership. The Indictment also includes allegations that, *inter alia,* Boyd breached his duties by engaging in commercial bribery. The distinction between a civil breach of fiduciary duties and the criminal offense of honest services fraud is that

"honest services" contemplates that in rendering some particular service or services, the defendant was conscious of the fact that his actions were something less than in the best interests of the employer—or that he consciously contemplated or intended such actions. For example, something close to bribery.

*Brumley,* 116 F.3d at 734.

Honest services fraud can be based on conduct "undertaken in the private sphere." *Caldwell,* 302 F.3d at 409 (finding that breach of fiduciary duty owed to corporation provided basis for honest services fraud charge). Furthermore, an indictment alleging honest services fraud need not explicitly allege actual or material harm to the victims. *Id.,* 302 F.3d at 409–10. The Government need only prove that the defendant's false representations were material. The materiality element is satisfied if the misinformation or omissions "would naturally tend to lead or [are] capable of leading a reasonable employer to change its conduct." *United States v. Rybicki,* 354 F.3d 124, 145 (2d Cir.2003). The court concludes that the specific allega-

tions in the Indictment concerning Boyd's breaches of duties he owed the UTU and its membership under 29 U.S.C. § 501(a) of the LMRDA, Article 16 of the UTU Constitution, 29 U.S.C. § 432(a)(4), and/or 29 U.S.C. § 481(g) would, if true, naturally tend to prompt a reasonable employer to take measures to correct and prevent against such conduct in the future.

■ The court finds no support for Boyd's position that an honest services fraud claim based on a breach of duties imposed under the LMRDA is preempted by that statute's civil enforcement provisions. *See, e.g., United States v. Boffa,* 688 F.2d 919, 930 (3d Cir.1982) (*concluding* that union officials' scheme to defraud union members of the right to honest and faithful services violated LMRDA section 501(a) duties and could support an honest services mail fraud charge).

The court therefore concludes that the Indictment is supported by a legally viable prosecutorial theory that provides Boyd with sufficient notice regarding an alleged scheme to defraud UTU and its membership of honest services to which they were entitled.

**B. Commercial Bribery/ITAR Allegations**

**1. *Boyd's Arguments***

Boyd asserts that the predicate RICO crimes alleged in the Indictment are various state commercial bribery offenses and ITAR[8] crimes and, as alleged, lack the essential element of harm to the UTU. Boyd argues that it is not enough to allege that he received money and that he had a fiduciary status vis-a-vis the UTU, but the Government must also allege harm to the employer or principal. Boyd argues that the Indictment, which alleges that defendants accepted money from DLCs, does not allege that this conduct harmed the UTU economically. Therefore, Boyd contends that the RICO counts premised on these violations should be dismissed.

**2. *The Government's Arguments***

The Government contends that a RICO indictment based on an ITAR offense need not recite each of the elements of the applicable underlying state offenses. Citing *United States v. Orena,* 32 F.3d 704, 713–14 (2d Cir.1994), the Government contends that RICO does not incorporate state pleading requirements. The Government argues that Boyd has confused the Government's burden of proof at trial with its pleading requirements and that speculation as to whether the Government can satisfy its burden at trial would not justify dismissing these charges.

**3. *The Court's Conclusion***

An ITAR offense involves using interstate travel or the mails with intent to "promote, manage, establish, carry on, or facilitate ... any unlawful activity." 18 U.S.C. § 1952(a)(3). Securing a conviction requires proof of "some act designed to promote or further that illegal purpose." *United States v. Rizzo,* 418 F.2d 71, 74 (7th Cir.1969) (citations omitted), *cert. denied sub nom. Tornabene v. United States,* 397 U.S. 967, 90 S.Ct. 1006, 25 L.Ed.2d 260 (1970). The Act defines "unlawful activity" to include bribery in violation of the laws of a state or of the United States where the illicit activity occurs. 18 U.S.C. § 1952(b)(2). In terms of pleading requirements,

> [r]eference to state law is necessary only to identify the type of unlawful activity in which the defendants intended to engage. It is not necessary to allege the elements of the state substantive offense intended to be committed, or that the

---

**8.** "ITAR" crimes are violations of the Interstate Transportation in Aid of Racketeering Act (18 U.S.C. § 1952), commonly known as "the Transportation Act."

unlawful objective intended was accomplished.

*Rizzo,* 418 F.2d at 74 (citations omitted); *accord United States v. Conway,* 507 F.2d 1047, 1051 (5th Cir.1975).

■ Because there is no requirement that an indictment allege both the essential elements of the ITAR statute and each element of the underlying state offense comprising the "unlawful activity" element of the ITAR offense, the court concludes that the ITAR allegations in the Indictment have been adequately pleaded.

## C. Embezzlement Counts

### 1. *Boyd's Arguments*

Boyd challenges the manner in which Counts Five through Fourteen, which charge Boyd with aiding and abetting Ralph Dennis in violating 29 U.S.C. § 501(c), are pleaded in the Indictment. Boyd argues that the Government has only alleged that he caused Ralph Dennis to travel at UTU's expense, but has not alleged facts from which fraudulent intent could be inferred. Because section 501(c) offenses fall into two categories, those involving unauthorized use of union funds and those involving authorized use of funds, Boyd argues that the Government's burden with regard to proving fraudulent intent will vary depending into which category Boyd's conduct is alleged to fall. Boyd contends that the Indictment's failure to articulate whether the expenses in question were authorized or unauthorized means that the charging instrument lacks sufficient facts to conclude whether there would be a section 501(c) violation.

### 2. *The Government's Arguments*

The Government argues that it is not required to specify the exact means of embezzlement within an indictment. The Government contends that the Indictment contains allegations sufficient to satisfy the pleading requirements as set forth in *United States v. Lavergne,* 805 F.2d 517 (5th Cir.1986). The Government further contends that the racketeering acts alleged in the Indictment are quite specific, in that the Indictment identifies ten separate trips that Boyd directed Ralph Dennis to take, the exact dates of those trips, the exact amounts allegedly embezzled, and the source of the embezzled funds.

### 3. *The Court's Conclusion*

■ Boyd's arguments regarding section 501(c) embezzlement rely on cases that address the sufficiency of evidence necessary to sustain a conviction, not the pleading requirements relevant to the instant motion to dismiss. The Indictment contains allegations corresponding to all required elements of a section 501(c) offense. Whether the Government will attempt to prove that Boyd took UTU funds that were unauthorized or authorized is an evidentiary issue that will affect the Government's burden of proof at trial in terms of proving the element of fraudulent intent. *See United States v. Hammond,* 201 F.3d 346, 349 (5th Cir.1999). The failure to allege whether the funds were authorized or unauthorized has no bearing on the sufficiency of the Indictment.

## D. Witness Tampering

### 1. *Boyd's Arguments*

Boyd asserts that the Indictment does not identify the specific official proceeding from which Boyd allegedly caused an attorney/witness to withhold testimony. Boyd argues that such an omission is fatal to the Indictment because "without that information, the defense did not know what proceeding the grand jury was charging the defendants with attempting to influence."[9] Therefore, Boyd contends that

---

9. Defendants' Amended Memorandum in Support of Opposed Motion to Dismiss, Dock-

Counts Fifteen and Sixteen, as well as the racketeering acts that correspond to these charges, should be dismissed.

### 2. *The Government's Arguments*

The Government argues that Boyd's reliance on *United States v. Murphy*, 762 F.2d 1151 (1st Cir.1985), is misplaced because the facts of that case are distinguishable. Unlike the allegations in the indictment in *Murphy*, 762 F.2d 1151, the Government contends that the instant Indictment identifies the date of the alleged offense, the particular witness with whom Boyd allegedly tampered, the specifics of the anticipated testimony, and the jurisdiction where the official proceeding in question occurred, that is, in the Southern District of Texas.

### 3. *The Court's Conclusion*

An individual commits witness tampering who

> knowingly uses intimidation or physical force, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to—
>
> . . .
>
> (2) cause or induce any person to—
>
> (A) withhold testimony, or withhold a record, document, or other object, from an official proceeding . . . .

18 U.S.C. § 1512(b)(2)(A). Having compared the indictment in *Murphy*, 762 F.2d 1151, with the instant Indictment, the court concludes that the indictments are distinguishable.

First, the indictment in *Murphy* did little more than parrot the statute and included no detail as to the specific conduct in which the defendants had allegedly engaged or what testimony they had tried to compel a particular witness to withhold in

et Entry No. 134 at p. 23 (*quoting United States v. Murphy*, 762 F.2d 1151, 1154–55 (1st Cir.1985)).

"an official proceeding." *Murphy*, 762 F.2d at 1153. In the instant Indictment Boyd is given notice of the specific acts that the Government intends to prove, that is, that Boyd intimidated, threatened, and corruptly persuaded

> ATTORNEY NUMBER Twenty-five by instructing ATTORNEY NUMBER Twenty-five to remain quiet concerning the activities of the UTU Enterprise, including his payment of $30,000 in cash for his designation, with the intent to cause and induce ATTORNEY NUMBER Twenty-five to withhold testimony from an official proceeding in the Southern District of Texas.[10]

■ Second, the indictment in *Murphy* contained only one count, while the witness tampering counts in Boyd's Indictment are two of sixteen counts, and the witness tampering counts specifically refer to "the UTU Enterprise" and the "designation" as a DLC that are explained at length in the pages of allegations devoted to explicating Counts One through Fourteen. *Compare Murphy*, 762 F.2d at 1152 *with* the Indictment, Docket Entry No. 76 at pp. 1–103. Where courts have concluded that parroting the relevant statute is insufficient, that conclusion was prompted by "a determination that the factual information that is *not* alleged in the indictment goes to the very *core of criminality* under the statute." *Kay*, 359 F.3d 738, 755–57 (emphasis in original). When the witness tampering counts are read within the context of the entire Indictment, it is clear that the Indictment provides Boyd with sufficient factual detail about the core of criminality specifically at issue in the witness tampering counts, thereby satisfying pleading requirements and giving Boyd adequate notice.

10. Indictment, Docket Entry No. 76 at p. 103.

## IV. *Conclusion and Order*

For the reasons set forth above, Defendant Byron Boyd's Opposed Motion to Dismiss (Docket Entry No. 126) is **DENIED**.