**UNITED STATES of America,**

v.

**Arthur GIANELLI, Mary Ann Gianelli, Frank Iacaboni, Philip Puopolo, Dennis Albertelli, Randy Albertelli, Gisele Albertelli, Salvatore Ramasci, Rafia Feghi, and Joseph Yerardi, Defendants.**

**Criminal No. 05–10003–NMG.**

United States District Court,
D. Massachusetts.

Nov. 7, 2008.

Joseph J. Balliro, Jr., Balliro & Mondano, Juliane Balliro, Wolf, Block, Schorr & Solis–Cohen LLP, Kevin L. Barron, John H. Brazilian, Thomas J. Butters, Butters Brazilian LLP, Patricia A. DeJuneas, Richard M. Egbert, Law Office of Richard M. Egbert, Page Kelley, Federal Defenders, E. Peter Parker, Law Office of E. Peter Parker, Boston, MA, Walter B. Prince, Paige A. Scott Reed, Prince, Lobel, Glovsky & Tye LLP, Boston, MA, Charles W. Rankin, Rankin & Sultan, Robert L. Sheketoff, Matthew D. Thompson, Butters, Brazilian & Small LLP, Stephen J. Weymouth, Law Office of Stephen J. Weymouth, Boston, MA, Roger A. Cox, Cox & Cox, Ashland, MA, Debra A. DelVecchio, DelVecchio & Houseman, Salem, MA, Edward A. Gottlieb, Law Offices of Edward A. Gottlieb, Brighton, MA, David R. Kerrigan, Kenney & Sams, P.C., Framingham, MA, Frederick B. McAlary, Jr., Attorney Fred B. McAlary, Jr., Andover, MA, Kevin S. Nixon, Attorney at Law, West Medford, MA, Raymond A. O'Hara, Worcester, MA, Jeffrey S. Weiner, Weiner & Ratzan, P.A., Miami, FL, for Defendants.

Michael L. Tabak, John A. Wortmann, Jr., Fred M. Wyshak, Jr., United States Attorney's Office, John Joseph Moakley Federal Courthouse 1, Boston, MA, Joseph Wheatley, U.S. Department of Justice, Washington, DC, for plaintiff.

Roger Witkin, Boston, MA, for interested party.

## MEMORANDUM & ORDER

GORTON, District Judge.

In this criminal case, involving ten defendants, four motions to dismiss and three motions to sever have been filed by several defendants.

## I. Background

### A. The Defendants

According to the government, the defendants were members of a criminal organization ("the Gianelli Group") which earned money through illegal gambling activities, loansharking, extortion, money laundering and committing crimes of violence including arson. Arthur Gianelli ("Gianelli") was the purported leader of the Gianelli Group. Defendant, and Gianelli's wife, Mary Ann Gianelli ("Mary Ann"), allegedly engaged

in laundering proceeds of the Gianelli Group, filed false income tax returns and illegally structured transactions. Joseph Yerardi, Jr. ("Yerardi"), who was in jail for racketeering for all but two months of the ten years between 1995 and 2005, maintained his contact with the Gianelli Group and, in fact, the government alleges that Gianelli ran Yerardi's gambling business and forwarded the proceeds to Yerardi and Yerardi's wife, another defendant, Rafia Feghi ("Feghi"). Feghi is accused of knowingly receiving proceeds generated from criminal activities and concealing the true source of the proceeds including laundering proceeds through the bank account of her first husband, Yousef Bina ("Bina").

The government alleges that defendant Dennis Albertelli ("Albertelli") managed the sports betting business and helped with the electronic gaming machine business for Gianelli, acted as an agent for the sports betting and operated an illegal gambling business involving football cards. Albertelli's son, Randy Albertelli ("Randy"), and Albertelli's wife, Gisele Albertelli ("Gisele"), who are also defendants, are alleged to have participated in the operation of the illegal football card business. Gisele is alleged to have participated in laundering proceeds and Randy was purportedly an agent for the sports betting. Tony Daniels ("Daniels") participated in the operation of the sports betting business and Deeb Homsi ("Homsi") acted as "muscle" to assist Albertelli in the collection of unlawful debts and participated in an alleged arson of "The Big Dog Grille." The government alleges that the defendant Frank Iacaboni ("Iacaboni") was a close associate of Albertelli, participated in the Gianelli Group's sports betting business and conspired to damage The Big Dog Grille by fire or explosion.

Defendant Philip Puopolo ("Puopolo") is alleged to have engaged in illegal bookmaking and loansharking with other members of the Gianelli Group. He also purportedly operated a sports betting office, acted as an agent for Gianelli, illegally operated electronic gaming machines at the Revere Businessmen's Association ("RBA") and attempted to persuade witnesses to provide false testimony. Stephen Russo ("Russo") managed the sports betting office operated by Puopolo and participated in illegal bookmaking. Salvatore Ramasci ("Ramasci") allegedly acted as bookkeeper for the Gianelli Group's illegal sports betting business, coordinated the collection and payout of money to and from the gambling business and participated in the distribution of proceeds of the illegal gambling business.

Defendant Michael Pinialis ("Pinialis") and his wife Eneyda Gonzalez Rodriguez ("Gonzalez Rodriguez"), in conjunction with Todd Westerman ("Westerman"), operated Weshtod Consultants which ran an offshore gambling office in San Jose, Costa Rica. The office provided a toll-free 1–800 number and an internet site for the Gianelli Group to enable people in Massachusetts to place bets. Weshtod is now defunct and Pinialis and Gonzalez Rodriguez are fugitives believed to be in Costa Rica.

## B. Additional Information About the Gianelli Group

According to the government, members and associates of the Gianelli Group operated several illegal gambling businesses, loaned money at unlawful rates and invested the proceeds of their illegal activities in otherwise legitimate businesses. The Gianelli Group associated itself with certain members of organized crime including members of the New England Family of La Cosa Nostra ("the Family"). The leaders of the Gianelli Group purportedly made payments to certain members of the

Family for the right to operate their criminal businesses.

The government also alleges that the Gianelli Group 1) infiltrated otherwise legitimate businesses and attempted to gain control of those businesses, 2) used those businesses as vehicles to engage in money laundering schemes and 3) used threats of force and intimidation, including arson, to attempt to gain ownership and control of the businesses. Several of the defendants purportedly engaged in a scheme to make it appear as though Mary Ann performed services for two trucking companies to thereby feign that she had a legitimate source of income.

## C. Procedural History

The initial indictment in this case was filed on January 5, 2005, and was followed by a superseding indictment filed on April 7, 2005. On September 13, 2006, a Second Superseding Indictment was returned charging 13 defendants with 520 counts relating to racketeering. In a previous indictment, there were 17 defendants but three defendants, Homsi, Daniels and Westerman, pled guilty in December, 2005, and January, 2006 (i.e., prior to the return of the second superseding indictment) and have not yet been sentenced. Weshtod Consultants, a now defunct company, was not charged in the second superseding indictment. Since the second superseding indictment defendant Russo has pled guilty. Two defendants, Gonzalez Rodriguez and Pinialis, are currently fugitives. Ten defendants remain scheduled to go to trial on February 23, 2009.

On February 16, 2006, defendant Gianelli filed a motion to dismiss which is opposed by the government. More recently, on March 21, 2008, Phillip Puopolo filed three separate motions to dismiss. Those motions were subsequently joined by defendants Gianelli and Yerardi and are opposed by the government.

On July 11, 2007, defendant Feghi filed a motion to sever. Defendants Puopolo and Yerardi also filed motions to sever on March 21 and April 18, 2008, respectively. All three motions to sever have been opposed by the government.

## II. Motions to Dismiss

### A. Gianelli's Motion to Dismiss Based on Immunized Grand Jury Testimony

Gianelli has moved to dismiss the indictment against him claiming that government used immunized grand jury testimony from 1993 to bring the pending charges. He asserts that the government's use of immunized testimony violates his Fifth Amendment rights as set forth in *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). He contends that he is entitled to an evidentiary hearing because 1) he previously testified under a grant of immunity and 2) the substance of his testimony is relevant to the case against him.

The government opposes Gianelli's motion and requests that this Court defer holding a *Kastigar* hearing. It contends that a trial will obviate the need for an evidentiary hearing and that convening such a hearing now would be unfair in that it would require the government to present all of its evidence in advance of trial.

At a status conference held on September 10, 2008, this Court instructed counsel for Gianelli to inform the Court within 30 days if he intends to press his motion to dismiss. Counsel for Gianelli has not done so and, consequently, his motion will be denied without prejudice. If Gianelli chooses to pursue the issue, the Court will consider convening a *Kastigar* hearing post-trial. *See United States v. De Diego,*

511 F.2d 818, 823–24 (D.C.Cir.1975) (trial court may hold a post-trial hearing to determine whether evidence presented at trial was tainted by immunized testimony).

### B. Motion to Dismiss Portion of Indictment Charging Collections of Unlawful Debts

Defendant Puopolo, joined by Gianelli and Yerardi, moves to dismiss the portions of Counts One and Two charging them with "attempted" collection of unlawful debts because the RICO statute does not specifically criminalize attempted debt collection. They aver that there is no generalized crime of attempt in federal criminal law and assert that the inclusion of the phrase "and attempted collection" in the indictment is improper.

The government responds that courts in other circuits have held that attempted collection of unlawful debts, although not explicitly mentioned, is covered by the RICO statute. *See United States v. Pepe,* 747 F.2d 632, 674 (11th Cir.1984) (RICO not limited to collection of unlawful debt "only when cash actually exchanged hands"); *see also United States v. Eufrasio,* 935 F.2d 553, 576 (3d Cir.1991) (same). The government also asserts that the evidence at trial will demonstrate that all or part of the unlawful debts at issue were collected, making the issue of attempted collection moot.

Given that the issue could be rendered moot by the evidence presented at trial, the defendants' motion to dismiss portions of the indictment charging attempted collection of unlawful debts will be denied without prejudice.

### C. Motion to Dismiss Duplicitous Counts

Defendants Puopolo, Gianelli and Yerardi have moved to dismiss what they allege are duplicitous counts in the indictment.

A count is duplicitous if it combines two or more distinct and separate offenses. The danger is that "the jury may find a defendant guilty on a count without having reached a unanimous verdict on the commission of any particular offense." *United States v. D'Amico,* 496 F.3d 95, 98–99 (1st Cir.2007), *vacated on other grounds,* —— U.S. ——, 128 S.Ct. 1239, 170 L.Ed.2d 52 (2008).

The defendants assert that Counts 510, 513, 515 and 517 and Racketeering Acts 26 and 28–31, each of which charges that the defendants used extortionate means "to collect and attempt to collect an extension of credit," are duplicitous. They also contend that attempts and completed crimes have separate and distinct elements and that the alleged racketeering acts include the additional offense of conspiracy, thus rendering those counts and acts duplicitous.

The recent First Circuit opinion of *United States v. D'Amico* held that it was not duplicitous to include attempt and completed extortion in the same count under the Hobbs Act, 18 U.S.C. § 1951. 496 F.3d at 101. The court reasoned that attempted extortion, having no elements distinct from the completed crime, was a lesser included offense of extortion. *Id.* at 99–100. As such there was no risk that the jury would return a verdict of guilty without unanimously finding that the defendant committed the crime. *See id.*

Defendants offer no reason, nor does this Court discern any, why an attempt to collect credit by extortionate means, under 18 U.S.C. § 894(a)(1), should be treated differently than attempted extortion under 18 U.S.C. § 1951. Consequently, this Court finds that *D'Amico* controls and that the counts charging attempted extortion along with the completed crime are not duplicitous.

With respect to the racketeering acts that charge conspiracy together with the substantive crime, the government concedes that those counts are duplicitous and that it must make an election to proceed under a conspiracy theory or a substantive theory at the time of trial. Therefore, with respect to the racketeering acts, defendants' motion to dismiss will be denied without prejudice. If, at the time of trial, the government does not elected a single theory under which to proceed, the Court will entertain a renewed motion to dismiss.

### D. Motion to Dismiss Unconstitutionally Vague and Indefinite Predicate Acts and Counts

The defendants also contend that many of the charges against them are unconstitutionally vague and indefinite. The challenged charges fall into two categories: 1) various unlawful lending and collection activities (Counts 1, 2, 508, 510, 513, 515 and 517 and Racketeering Act 25) and 2) witness tampering (Counts 511 and 520 and Racketeering Acts 27 and 32). The witness tampering allegations are made against Puopolo only.

#### 1. Legal Standard

■ The Federal Rules of Criminal Procedure require an indictment to be a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed.R.Crim.P. 7(c)(1). To be constitutionally sufficient an indictment must 1) contain the elements of the offense intended to be charged, and 2) "sufficiently apprise[ ] the defendant of what he must be prepared to meet." *Russell v. United States*, 369 U.S. 749, 763, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962).

#### 2. Application

##### a. Unlawful Lending and Collection Counts

The defendants' objection with respect to the lending and collection activity is that the indictment does not specify a precise time or location at which the charged acts took place. Such an omission, they assert, leaves them unable to prepare a defense.

The defendants analogize their situation to that of the defendant in *United States v. Tomasetta* where an indictment was dismissed for vagueness because it charged the defendant with making threats by an unstated means to an unnamed person, specifying only the date and that the location was somewhere in the City of Worcester. 429 F.2d 978, 979 (1st Cir.1970). The First Circuit overturned Tomasetta's conviction because, short of proving that he had not been in Worcester at all on the day of the alleged threat, he could not defend himself against such charges without more information. *Id.* at 980.

Here, the defendants observe that although the indictment against them identifies the alleged victims, it specifies neither a location nor a specific time, describing instead a range of several years for each charge. They contend that they are handicapped in their defense much as Tomasetta was and move the Court to dismiss the challenged counts.

The indictment in this case is distinguishable from *Tomasetta* in that each unlawful lending or collection count identifies the victim by name. In *Tomasetta*, the First Circuit emphasized that "failure to name the victim, under the circumstances, was fatal." *Id.* The indictment in this case is more analogous *United States v. Sedlak*, 720 F.2d 715, 719 (1st Cir.1983). In that case, the First Circuit found that an indictment for conspiracy to use extortionate means to collect an extension of credit was sufficient because:

> The victim, Bill White, was named, thus presenting a major distinction from the *Tomasetta* case. The essential elements

of the offense were alleged.... The persons alleged to have been involved in the conspiracy were named, and the general time frame of the occurrence of the conspiracy was identified.

*Id.*

■ The indictment in this case is similarly specific. For each count of unlawful lending and collection the indictment identifies: 1) the individuals alleged to have been involved, 2) the victim and 3) the time frame during which the conduct is alleged to have occurred. Because the indictment is not unconstitutionally vague with respect to the counts alleging unlawful lending and collection, the defendants' motion to dismiss will be denied with respect to those counts.

### b. Witness Tampering Counts

Defendant Puopolo's specific objection to the witness tampering charges is that the indictment does not identify the proceeding that he allegedly attempted to influence. He relies on *United States v. Murphy* in which the First Circuit held that failure to identify the official proceeding which was the target of the alleged tampering rendered the indictment insufficient. *See* 762 F.2d 1151, 1154 (1st Cir. 1985).

The government counters that, in the context of a 500–plus count indictment, it is clear that it is the present criminal proceeding that is at issue and that not every detail of a crime must be spelled out in a grand jury indictment. It cites cases from other districts which hold that failure to specify the proceeding to which a tampering charge relates is not fatal if the proceeding is clear from the context of the indictment. *See United States v. Potts*, No. 07–85, 2007 WL 2219392, at *6 n. 1 (D.Minn. July 30, 2007) (magistrate's report and recommendation as adopted by the court); *United States v. Boyd*, 309

F.Supp.2d 908, 916 (S.D.Tex.2004). It also suggests that any shortcomings in the witness tampering counts can be cured by a bill of particulars.

Despite the government's protestations to the contrary, *Murphy* appears to control the issue before this Court. In that case, the First Circuit concluded that a count for witness intimidation was vague because the indictment merely recited the statute and

> did not identify *any* proceeding in which defendants were allegedly attempting to influence [the witness's] testimony. It is wholly unclear from the indictment whether the grand jury was charging that the defendants tried to influence [the witness's] testimony in the proceeding against Dawlett, or in the proceeding against them, or in some other proceeding altogether.

*Murphy*, 762 F.2d at 1154.

■ Here the indictment is similarly vague. As in *Murphy*, the challenged counts and racketeering acts simply repeat the language of the witness tampering statute and do not identify what "official proceeding" Puopolo was allegedly attempting to influence. *Id.* at 1153. Even when read in the context of the indictment, which describes much of the other charged conduct in detail, it remains unclear whether Puopolo is charged with attempting to influence witnesses in connection with this case or other matters. *Cf. Potts*, 2007 WL 2219392, at *6 n. 1 (official proceeding evident from context); *Boyd*, 309 F.Supp.2d at 916 (official proceeding evident from context where indictment detailed manner of intimidation and nature of testimony defendant sought to influence).

Finally, the government's assertion that any deficiencies in the witness tampering counts can be cured by a bill of particulars is misguided. *See Murphy*, 762 F.2d at

1154 ("it has long been settled law that an invalid indictment cannot be cured by a Bill of Particulars") (citation omitted). Here, the indictment does not specify the proceeding that Puopolo attempted to influence. Identifying that proceeding in a bill of particulars would not ensure that Puopolo would be tried for the same conduct for which the Grand Jury indicted him. Consequently, defendant Puopolo's motion to dismiss will be allowed with respect to Counts 511 and 520 and Racketeering Acts 27 and 32.

## III. Motions to Sever

Several defendants filed motions to sever prior to the September 10, 2008, status conference at which this Court invited all parties to submit proposals for streamlining the issues in this case for trial. This memorandum and order addresses those motions but not the proposals which remain under advisement.

### A. Defendant Feghi's Motion to Sever

Defendant Feghi is charged with racketeering conspiracy (Count 1), racketeering (Count 2), money laundering conspiracy (Counts 9 and 427) and money laundering (Counts 10–86 and 428–492). She has moved this Court to sever her trial from that of her codefendants because 1) joinder was improper because she was not involved in the same acts or transactions which form the basis of the more serious charges against her codefendants, 2) the "spillover" of extremely prejudicial evidence will deny her a fair trial and 3) her husband, Yerardi, will testify on her behalf if her trial is severed.

#### 1. Improper Joinder

■ The federal criminal rules allow the government to charge two or more defendants in the same indictment when the offenses are of the same or similar character or are part of a common scheme or plan. Fed.R.Crim.P. 8(b). Furthermore, when RICO counts "embrace[ ] all of the acts and transactions upon which the other . . . counts are based" joinder is proper. *United States v. Boylan,* 898 F.2d 230, 245 (1st Cir.1990) (citation omitted).

■ Joinder is clearly appropriate here, where all of the defendants, including Feghi, are charged in the RICO substantive and conspiracy counts. According to the government's allegations all of the offenses charged are part and parcel of the larger racketeering scheme.

#### 2. Prejudicial Spillover

■ Another criminal rule permits a district court to sever if "it appears that a defendant or the government is prejudiced by a joinder." Fed.R.Crim.P. 14. Rule 14 does not require severance for the appearance of prejudice but rather permits the district court to exercise discretion in determining whether a severance is warranted. *Zafiro v. United States,* 506 U.S. 534, 539, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993). If the parties have been properly joined under Rule 8(b), severance should be ordered

> only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.

*Id.* In order to overcome the presumption in favor of joinder, a defendant must demonstrate that she would suffer "prejudice so pervasive that it would be likely to effect a miscarriage of justice." *United States v. DeLeon,* 187 F.3d 60, 63 (1st Cir.1999). Although the risk of prejudice is higher when many defendants are tried in a complex case that risk can be overcome by proper jury instructions. *See id.*

Feghi claims that, without severance, the "spillover" from evidence against the defendants charged with arson and extortion will severely prejudice her right to a fair trial. The government responds that, with appropriate instruction, the jury will have no difficulty separating evidence of arson and extortionate transactions from evidence of money laundering. Because Feghi has not shown that a miscarriage of justice will result if she is not tried separately, this Court will not sever for that reason. Any risk of the suggested prejudice can be cured by a carefully crafted jury instruction.

### 3. Exculpatory Testimony of Yerardi

To be entitled to a severance on the basis of a codefendant's testimony, a defendant must demonstrate 1) a bona fide need for the testimony, 2) the substance of the testimony, 3) its exculpatory nature and effect and 4) that the codefendant will, in fact, testify if the cases are severed. *United States v. Drougas*, 748 F.2d 8, 19 (1st Cir.1984). Even where such a showing is made, the court, in deciding whether to sever the cases, should consider 1) the significance of the testimony in relation to the theory of defense, 2) whether the testimony would be subject to substantial damaging impeachment, 3) the counter arguments of judicial economy and 4) the timeliness of the motion. *Id.* The First Circuit has explained that

> [t]he courts show a healthy, and quite justified, skepticism whether the defendant would call his codefendant if he could, and whether the codefendant would not claim his constitutional privilege even in a separate trial.

*United States v. Houghton*, 554 F.2d 1219, 1222 (1st Cir.1977).

Here, Yerardi has submitted a sworn affidavit, *ex parte* and under seal, regarding his testimony. Notwithstanding that affidavit, this Court finds that the requested severance is unjustified. Any testimony proffered by Yerardi would be subject to substantial and damaging impeachment given his criminal history and his relationship with the defendant Feghi.

### B. Defendant Puopolo's Motion for Speedy Trial and to Sever and Defendant Yerardi's Motion to Sever

Defendant Puopolo seeks severance 1) to avoid prejudicial spillover from evidence against his codefendants who are charged with money laundering and arson and 2) to receive a speedy trial. Similarly, defendant Yerardi asserts that his trial should be severed because evidence relating to the alleged arson and witness tampering of his codefendants would be extremely prejudicial and would deny him a fair trial.

Puopolo is charged with racketeering conspiracy (Count 1), racketeering (Count 2), illegal gambling business (Counts 3–4), use of a wire communication facility in connection with gambling (Counts 6–7), extortionate collection of credit (Counts 510, 513, 515, 517 and 519), extortionate collection of credit conspiracy (Counts 509, 512, 514, 516 and 518), extortionate extension of credit (Count 508) and witness tampering (Counts 511 and 520). Yerardi is charged with racketeering conspiracy (Count 1), racketeering (Count 2), illegal gambling business (Count 3), use of wire communication facility in connection with gambling (Count 6–7), money laundering conspiracy (Counts 9, 87 and 427), money laundering (Counts 10–86, 88–185 and 428–492), extortionate collection of credit conspiracy (Count 516) and extortionate collection of credit (Count 517).

#### 1. Prejudicial Spillover

As explained above with respect to defendant Feghi's motion to sever, the presumption in favor of joinder can be overcome only by a showing of "prejudice

so pervasive that it would be likely to effect a miscarriage of justice." *DeLeon,* 187 F.3d at 63. Neither Puopolo nor Yerardi has shown that any prejudice that would result from being tried with defendants charged with arson and other serious crimes would be so severe as to deny them a fair trial. Any prejudicial spillover from evidence relating to crimes not charged against these defendants can be cured by a carefully crafted jury instruction.

### 2. Speedy Trial Act

■ In his motion defendant Puopolo also requests a trial date as soon as practicable and a severance to the extent it is necessary to secure such a speedy trial. Due in part to the complex nature of the case and in part to the number of defendants, Puopolo has remained subject to these charges since the first superseding indictment was filed in 2006. Despite his decision to raise issues of delay in his memorandum, Puopolo has been at least partly responsible for the extensive lapse of time before trial. With few exceptions, he has been party to motions to continue and has assented to excludable delays. He does not allege that there has been a violation of the Speedy Trial Act and the Court finds no reason to sever his case on that ground.

### ORDER

In accordance with the foregoing, this Court makes the following rulings:

1) Defendant Gianelli's motion to dismiss based on immunized grand jury testimony (Docket No. 175) is **DENIED** without prejudice;

2) The government's motion to defer consideration of defendant's request for an evidentiary hearing (Docket No. 196) is **ALLOWED;**

3) Defendants' motion to dismiss portion of indictment charging collections of unlawful debts (Docket No. 459) is **DENIED** without prejudice;

4) Defendants' motion to dismiss duplicitous counts (Docket No. 460) is **DENIED** without prejudice;

5) Defendants' motion to dismiss unconstitutionally vague and indefinite predicate acts and counts (Docket No. 461) is, with respect to the counts and racketeering acts relating to Puopolo's alleged witness tampering (Counts 511 and 520 and Racketeering Acts 27 and 32), **ALLOWED** but is otherwise **DENIED;**

6) Defendant Feghi's motion to sever (Docket No. 383) is **DENIED;**

7) Defendant Puopolo's motion for speedy trial and to sever trials (Docket No. 463) is **DENIED;** and

8) Defendant Yerardi's motion to sever (Docket No. 477) is **DENIED.**

So ordered.